Wertheimer vs. Saunders and others.

WERTHEIMER, Appellant, vs. SAUNDERS and others, Respondents.

*March 16 — April 7, 1897.*

*Landlord's liability to tenant: Negligence of independent contractors.*

1. A landlord who, though not required by the lease to make repairs, undertakes at the request of his tenant to put a new roof upon the leased building, is bound to use reasonable care and skill to prevent injury by the elements to the property of his tenant therein while engaged in removing the old and putting on the new roof, and is liable for any such injury caused by the want of such care and skill, notwithstanding his undertaking was without consideration.

2. In such a case, where injury occurs to the tenant's property in the building from rain through the uncovered roof, the landlord cannot escape liability therefor on the ground that it resulted from the failure of the persons who had undertaken the job, as independent contractors, to exercise reasonable care to avoid such injury.

APPEAL from a judgment of the circuit court for Rock county: JOHN R. BENNETT, Circuit Judge. *Reversed.*

This was an action against the defendants for carelessly and negligently removing a portion of the roof of a certain building in Edgerton, Wisconsin, known as the Edgerton Tobacco Factory, leased by them to the plaintiff, whereby a large quantity of leaf tobacco owned by the plaintiff was exposed to the elements, and was greatly damaged by being

wet in a rain storm, rendering it necessary to re-handle and re-sort the tobacco, and purchase new cases for it; and other special damages were claimed by reason of the premises.

The defendants admitted the leasing and occupancy of the tobacco factory in question by the plaintiff for the purpose of storing and sorting leaf tobacco, and that, while a portion of the roof was off the building, a rain storm came up, and rained in upon the tobacco, wetting a portion of it to some degree, and doing slight damage thereto. They insisted that by the terms of the lease they were under no obligation to in anywise repair the building; that prior to the time of said injury the plaintiff, through his agent, who had charge of his business in Wisconsin and of the building in question, "repeatedly requested the defendants to repair and fix the roof of said building;" that by reason of said request, and not otherwise, defendants contracted with Messrs. Lindley & Morrissey, a firm of tinners engaged in making the roofing of buildings and competent for that purpose, to put a new tin roof thereon, by the job, at the rate of $9 per square of ten feet, and that they had no control over, and gave no directions of, the time or method of doing such work, except that the tinners agreed to observe proper care and caution in doing the same; that the defendants notified the plaintiff, through his said agent, of the making of said contract, and they entered upon the performance of the work by and with the plaintiff's consent; and that any and all injury done to the plaintiff's tobacco was the result of accidental or sudden rain coming up while said contractors were engaged in roofing the building, and without any negligence or unlawful acts on the part of the defendants, their servants or agents.

At the trial before the court and a jury, it appeared in evidence that the plaintiff had, at the time of the injury, about 800 cases of tobacco in the warehouse, worth about $25,000, 101 of which were more or less damaged by rea-

son of having been wet by water coming upon the same where the roof had been taken off; that 100 cases were re-handled, re-sorted, and re-packed, and the testimony tended to show items of damage approximating in all to the amount of $2,000; that the plaintiff left Frank Ayers in charge of the tobacco when he returned to New York, where he resided.

It appeared that Ayers, while having charge of the tobacco and looking after plaintiff's business in relation thereto, had repeatedly complained of the insufficiency of the roof, and that it leaked, and that the defendants would have a suit for damages in consequence; that the defendant *Clark*, who, it appears, had principal charge of the building on behalf of the defendants, told Ayers that they were making preparations to put on a new roof; that they were going to put on a new tin roof. Accordingly, on or about the middle of March, they employed the firm of Lindley & Morrissey to put on a tin roof for a specified price. They commenced to put tin on the roof on the 29th of April, obtaining a key to the building from Ayers for the purpose. On that day they put on five sections of tin eighteen and three-fourths inches wide and thirty feet long. On the following day the roof had been taken off of about 700 square feet, sufficient to furnish work for all the day; and there was testimony tending to show that in the morning and forenoon of that day the weather was threatening; that it began to rain between 12 and 1 o'clock, but that at 11 o'clock it looked like rain; that the rain continued during the remainder of Saturday, until 3 o'clock Sunday morning, and rained again Sunday night, and it continued raining more or less until the following Monday morning,— in all to the depth of about three inches. There was evidence tending to show that about 9 o'clock in the morning of Saturday the weather was threatening and had the appearance of rain, and that it did rain in the forenoon.

The defendant *Clark* testified to the efforts made on his part and others to protect the plaintiff's tobacco from rain, and that they would not have put on this roof except for the request of Mr. Ayers; that Ayers told him that they had got to fix the roof, and that he told Ayers that he would see defendants *Marsden, Pierce,* and *Saunders,* and see what they should do,— what kind of a roof they should put on; that he subsequently, before the roof was commenced, told him they were going to put on a new tin roof; that they had seen the tinners, and had made a contract; that this was three weeks before the roof was commenced. It appeared that the defendants knew there was a great quantity of tobacco in the building. The defendant *Saunders* also testified to some of the complaints made to him by Ayers, and that he referred him to *Clark,* as he was overseeing the building. The defendant *Pierce* testified that he consented to the putting on of this roof, because he understood it was wanted by Mr. Ayers, and otherwise would not have consented. There was evidence showing the agency of Ayers to make the request in respect to the roof, and that the contractors for putting on the roof, Lindley & Morrissey, were competent and experienced men for that purpose. The defendants were all the time in the occupancy and use of a small portion of the building, which they had reserved by the lease.

At the close of the testimony the court directed a verdict in favor of the defendants, on the ground that the defendants were not liable for the acts or negligence of Lindley & Morrissey, who were independent contractors for putting on the roof, whereupon judgment was given in favor of the defendants, from which the plaintiff appealed.

For the appellant there was a brief by *Fethers, Jeffris, Fifield & Mouat,* and oral argument by *C. L. Fifield.* They argued that the defendants could not absolve themselves from responsibility by letting the job to independent con-

tractors. *Sulzbacher v. Dickie,* 51 How. Pr. 500, 523; Moak's Underhill, Torts (1881), 276, 277, and cases cited by the court. Rain was to be expected during the progress of the work, and the damage suffered was the natural and probable result of doing the work without preparation for protecting the contents of the building, and consequently the employer is subject to the same liability as the contractors. *Railroad Co. v. Morey,* 47 Ohio St. 207; *Woodman v. Metropolitan R. Co.* 149 Mass. 335; *Carlson v. Stocking,* 91 Wis. 432, 435.

For the respondents there was a brief by *Luse & Wait,* and oral argument by *L. K. Luse.* They contended that where the work to be done involves the duty of ordinary care only, as in this case, the same can be delegated to independent contractors, and the employer will be absolved from liability for any injury occasioned by the negligent mode in which it is done by such contractors. *Hackett v. W. U. Tel. Co.* 80 Wis. 192; *Smith v. Milwaukee Builders' & Traders' Exchange,* 91 id. 360; *Clark v. Fry,* 8 Ohio St. 358; *McCafferty v. S. D. & P. M. R. Co.* 61 N. Y. 198; *Tibbetts v. K. & L. R. Co.* 62 Me. 437; *Herrington v. Lansingburgh,* 110 N. Y. 145; *Blumb v. Kansas City,* 84 Mo. 112; *Gourdier v. Cormack,* 2 E. D. Smith, 254; *Carter v. Berlin Mills Co.* 58 N. H. 52; *Edmundson v. P., M. & Y. R. Co.* 111 Pa. St. 316; *O'Rourke v. Hart,* 7 Bosw. 511.

PINNEY, J.   There was no stipulation in the lease from the defendants to the plaintiff requiring them to make repairs upon the building, or to put a new roof thereon; and any promise to do so, founded merely on the relation of the parties, and not one of the conditions of the lease, would be without consideration, and for that reason would create no liability.   But it is very well settled that, although a gratuitous contract of that kind would not be binding, the lessors (defendants), having seen fit to treat it as binding, or to repair the roof, or to put a new one on the building, and having

actually entered upon its fulfillment, either by themselves or contractors under them, they would thereby come under some degree of liability to the plaintiff as to the manner of its performance.

It is well settled that for an injury occasioned by want of due care and skill in doing what one has promised to do an action may be maintained against him in favor of the party relying on such promise, and injured by the breach of it, although there was no consideration for the promise, and it was at the tenant's solicitation. *Gill v. Middleton*, 105 Mass. 477. In *Sulzbacher v. Dickie*, 51 How. Pr. 500, where the authorities were carefully considered, it was held that, where the owner of the building enters into a contract with a builder to put a new roof on it at a stipulated price, and during the time of putting it on, and after the removal of the old one, and while the building was in an exposed condition, the tenant or subtenant is damaged by rain, the owner is answerable for the damage, and not the contractor; that the landlord or owner, in the exercise of the right to put on a new roof, is bound to see that all reasonable care and skill is exercised in the removal of the old one and in the putting on of the new one to prevent injury by the elements to those who are in the occupation of the house; and where the act undertaken, from its very character, is either a nuisance, or one dangerous to others, the one undertaking it is not released from responsibility to any one injured thereby, although he has entered into a contract with some one to perform it, and the injuries occurred through the negligence of the latter. *Lasker Real Estate Asso. v. Hatcher* (Tex. Civ. App.), 28 S. W. Rep. 404; *Glickauf v. Maurer*, 75 Ill. 289.

Had the defendants personally attended to the putting on of the new roof, and been guilty, in doing so, of the negligence charged as the cause of the plaintiff's injury, we think there is no doubt but that they would be liable.

The evidence shows that the work of putting on the roof, in the present instance, was undertaken in consequence of the solicitation and request of the plaintiff, through his agent, Ayers, and by entering upon the performance of the work, though through the medium of a contract with third parties, the defendants assumed and owed the plaintiff a particular duty in the premises, namely, that reasonable care and caution should be used in conducting the work of taking off the old roof and putting on the new one, to avoid doing any injury to the property of the plaintiff. This was an absolute duty imposed by law, upon the particular facts, and was just as binding as if the defendants had stipulated in the lease for its performance. The work to be done was one attended with risk and danger to the property of the tenant by reason of its exposure to the elements. That one upon whom the law devolves a duty cannot shift it over upon another, so as to exonerate himself from the consequences of its nonperformance, is very clear. Shearm. & Redf. Neg. §§ 174–176; Wood, Master & S. § 316; Whart. Neg. § 185; *Promer v. M., L. S. & W. R. Co.* 90 Wis. 220–223; *Cadden v. Am. Steel Barge Co.* 88 Wis. 418, 419. In *Railroad Co. v. Morey*, 47 Ohio St. 207, 214, the court held it " clear that the law devolves upon every one about to cause something to be done which will probably be injurious to third persons the duty of providing that reasonable care shall be taken to obviate those probable consequences." And in *Hughes v. Railway Co.* 39 Ohio St. 476, it was stated that " The employer cannot relieve himself from liability by contracting with others for the performance of work, when the necessary or probable effect of the performance of the work would injure third persons."

The contention is that the defendants have discharged themselves from liability by turning the work over to third parties, independent contractors, for whose negligence in its performance they are not responsible. An examination of

adjudicated cases shows that there are exceptions to the general doctrine relied on by the defendants, and many such cases are cited, and the grounds of exception to the general rule are stated in the note to *Hawver v. Whalen*, 14 L. R. A. 828, as where a city is charged with the duty of keeping its streets in repair it is answerable for an improperly guarded excavation made by a contractor in building a sewer or the like. *Storrs v. Utica*, 17 N. Y. 104; *Robbins v. Chicago*, 4 Wall. 657–679; *Water Co. v. Ware*, 16 Wall. 567–576. If an injury might be anticipated as a direct or probable consequence of the performance of work contracted for, unless reasonable care be used, the negligence of the contractor or his employees will be chargeable to the person for whom the work is done, and the latter will be held liable accordingly. *Woodman v. Metropolitan R. Co.* 149 Mass. 335–339. In such case one cannot, by employing an independent contractor, relieve himself from liability for a failure to exercise reasonable care to discharge a duty incumbent upon himself, but he is bound to see to it that such care is used, although such contractor stipulates with him to take the risk and responsibility. So, in the present case, the defendants cannot claim immunity from liability by reason of having delegated or turned over to independent contractors for the work the performance of the duty they themselves owed to the plaintiff. Ever since the case of *Quarman v. Burnett*, 6 Mees. & W. 499, it has been considered that a person causing something to be done, the doing of which casts on him a duty, cannot escape from the responsibility attaching to him of seeing that duty performed, by delegating it to a contractor. He cannot thereby relieve himself from liability to those injured by the failure of the contractor to perform it. In *Bower v. Peate*, 1 Q. B. Div. 321–326, it was laid down that "A man who orders work to be executed, from which, in the natural course of things, injurious consequences must be expected to arise un-

less means are adopted by which they may be prevented, is bound to see to the doing of that which is necessary to prevent the mischief, and cannot relieve himself of his responsibility by employing some one else — whether it be the contractor employed to do the work from which the danger arises, or some independent person — to do what is necessary to prevent the act he has ordered to be done from becoming wrongful. There is an obvious difference between committing work to a contractor to be executed, from which, if properly done, no injurious consequences can arise, and handing over to him work to be done, from which mischievous consequences will arise, unless preventive measures are adopted. While it may be just to hold the party authorizing the work, in the former case, exempt from liability for injury resulting from negligence which he had no reason to anticipate, there is, on the other hand, good ground for holding him liable for an injury caused by an act certain to be attended with injurious consequences, if such consequences are not in fact prevented, no matter through whose fault the omission to take the necessary measures for prevention may arise." Here the removal of the roof was by the direction and authority of the defendants, and at the request of the plaintiff, and the injury resulted from what the defendants procured their contractors, under them, to do, and the alleged negligent manner of their doing it. It is manifest that the removal of the old roof, in order to put on a new one, necessarily exposed the property of the tenant, the plaintiff, to injury from the elements; and the duty, as already stated, was cast on the defendants to see that reasonable care was taken to avert such result. The argument of counsel for the defendants wholly ignores the existence of such duty on the part of the defendants, and its bearing, and erroneously assumes, as we think, that the action is to charge the defendants solely on the ground of the collateral negligence of the contractors. The doctrine of *Bower v. Peate, supra,* was ap-

proved in *Dalton v. Angus*, 6 App. Cas. 829, and Lord WATSON stated the rule to be that "When an employer contracts for the performance of work which, properly conducted, can occasion no risk to his neighbor's house, which he is under obligation to support, he is not liable for damages arising from the negligence of the contractor. But in cases where the work is *necessarily attended with risk* he cannot free himself from the liability by binding the contractor to take effectual precautions. He is bound, as in a question with the party injured, to see that the contract is performed; and is, therefore, liable, as well as the contractor, to repair any damage which may be done." In *Pickard v. Smith*, 10 C. B. (N. S.), 470, the precise point in this case was stated and considered, and it was said that "If an independent contractor is employed to do a lawful act, and in the course of the work he or his servants commit some casual act of wrong or negligence, the employer is not answerable. That rule is, however, inapplicable to cases in which . . . the contractor is intrusted with the performance of a duty incumbent upon his employer, and neglects its fulfillment, whereby an injury is occasioned." And this is the case now before us. The case of *Gray v. Pullen*, 5 Best & S. 970, is to the same effect, and is an authority, as stated in *Bower v. Peate*, that "it can make no difference, in point of principle, whether the obligation was imposed by statute or existed at law; and that, where work is being executed from which danger may arise to others, and it thereby becomes incumbent on the party doing or ordering it to be done to take measures to prevent damage resulting to others, he cannot divest himself of liability by transferring the duty to a contractor." 1 Q. B. Div. 327, 328. And this is in accord with *Storrs v. Utica*, 17 N. Y. 104; *Robbins v. Chicago*, 4 Wall. 657–679, and *Chicago City v. Robbins*, 2 Black, 418.

Inasmuch, therefore, as the defendants, as landlords, owed

the plaintiff, their tenant, a special duty, growing out of their relations as such, to use reasonable care to protect the plaintiff's property in the building from injury by the elements while repairing the roof or putting on a new one, as they had undertaken or assumed to do at his request, they became liable for the performance of such work in an insufficient or negligent manner, although the work was so performed for them by independent contractors. None of the cases cited by the defendants' counsel appear to have been cases where the landlord, or person contracting for doing the work, owed a special duty to the party injured that it should be done with reasonable care to avoid such injury. We think, therefore, for the reasons stated, that the present case falls within a well-recognized exception to the rule invoked on behalf of the defendants. There was sufficient evidence of negligence in the performance of the work causing the injury to require the case to be submitted to the jury. The direction of a verdict for the defendants, therefore, was erroneous.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.