Village of Weyauwega and another, Appellants, vs. Industrial Commission of Wisconsin and another, Respondents.

*February 9—March 6, 1923.*

*Workmen's compensation: Independent contractor: Workman painting village bridge for specified sum.*

Where deceased, a painter who did other jobs but hired no help and always did the work himself, agreed with a village to clean and paint a bridge for a specified price, under a contract which permitted him to do the work in his own way at his own convenience, but reserved no control over the details of the work, he was, as a matter of law, an independent contractor and not an employee within the meaning of the workmen's compensation act. Crownhart, J., dissents.

Appeal from a judgment of the circuit court for Dane county: E. Ray Stevens, Circuit Judge. *Reversed.*

The appeal is from a judgment affirming an award of the *Industrial Commission.*

Claimant's husband, John P. Kramer, sustained injuries while painting a bridge in the village of *Weyauwega* which resulted in his death. Compensation is claimed. The evidence taken before the *Commission* shows that the village board of the village of *Weyauwega* instructed the road and bridge committee of such board to have the bridge painted and hire some one to paint it. The committee secured bids from Kramer and another person. Kramer offered to remove the scales, clean and paint the bridge, the village to furnish the paint, he to furnish the brushes, for $75. The other bid was for $70 upon like conditions. These bids were reported to the village board by the committee and the committee was authorized, impliedly if not expressly, to exercise its own judgment in the matter. They then let the job to Kramer for $75. There was no written contract or memorandum of any sort. Kramer was told to "go to it whenever he got around to it." It was understood that he would paint the bridge at his own time and convenience. There was nothing said whether he should do the work personally or whether he would hire others to assist him. Although Kramer's bid was higher than the other received, they gave the job to him because he was a more reliable man and they thought they would get a more satisfactory job.

Upon this record the *Industrial Commission* found that Kramer was an employee at the time of the injury and awarded compensation to the claimant. On appeal the award was confirmed by the circuit court for Dane county. From such judgment the village and the insurance company bring this appeal.

For the appellants there was a brief by *Olin, Butler, Thomas, Stebbins & Stroud* of Madison, and oral argument by *Byron H. Stebbins.*

For the respondent *Industrial Commission* there was a

brief by the *Attorney General* and *Winfield W. Gilman,* assistant attorney general, and oral argument by *Mr. Gilman.*

*W. C. O'Connell* of Fox Lake, for the respondent *Lois Kramer.*

Owen, J.   In order to entitle the claimant to compensation the relation of employer and employee must have existed between the village and Kramer at the time the injury was sustained.   Appellant contends that the relation was not that of employer and employee, but that the relation of Kramer to the village was that of an independent contractor.   This is the sole question presented.

It is contended on the part of the respondent that the question presented is one of fact; that the evidence is such as to justify different inferences, and that the finding of the *Industrial Commission* is conclusive.   If different inferences may reasonably be drawn from the evidence, even though it be undisputed, then a question of fact is presented, and the conclusion of the *Industrial Commission* cannot be disturbed.   *Porter v. Industrial Comm.* 173 Wis. 267, 181 N. W. 317.   Whether under a given situation the relation is that of an employee or independent contractor is often a question of fact for the jury.   *Carlson v. Stocking,* 91 Wis. 432, 65 N. W. 58; *Walker v. Simmons Mfg. Co.* 131 Wis. 542, 111 N. W. 694; *Madix v. Hochgreve B. Co.* 154 Wis. 448, 143 N. W. 189.   Where the evidence is undisputed it is not always easy to determine whether the conclusion to be drawn therefrom is one of fact or of law.   Where the conclusion describes a legal status or condition it is ordinarily denominated a conclusion of law.   Whether a finding is an ultimate fact or conclusion of law depends upon whether it is reached by natural reasoning or by the application of fixed rules of law.   *Travelers Ins. Co. v. Hallauer,* 131 Wis. 371, 111 N. W. 527.   This court has held that

where there is no conflict in the evidence the determination of the status of one who claims to have been an employee is a conclusion of law.  *Cayll v. Waukesha G. & E. Co.* 172 Wis. 554, 179 N. W. 771; *Radtke Bros. & Korsch Co. v. Rutzinski,* 174 Wis. 212, 183 N. W. 168.  We are convinced that the evidence before the *Commission* did not present a question of fact.  The terms of the employment were simple and undisputed.  Kramer agreed to paint the bridge for $75.  He was to do it in his own way and at his own convenience.  Under the agreement he was at liberty to do the work himself or hire others to assist him. The village reserved no control over the details of the work. When the bridge was painted Kramer was entitled to $75. He could not have been discharged at the whim or caprice of the village.  Did this in law constitute him an independent contractor?

An independent contractor has been defined as "one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to control of his employer, except as to the result of his work."  *Madix v. Hochgreve B. Co.* 154 Wis. 448, 143 N. W. 189.  Also, "one who undertakes to do specific jobs of work, as an independent business, without submitting himself to control as to the petty details."  *Carlson v. Stocking,* 91 Wis. 432, 65 N. W. 558.  Numerous tests have been suggested and applied by the courts to assist in the determination of whether a given status is that of an employee or independent contractor, perhaps the most significant of which is whether the employer has the right to control the details of the work.  *Madix v. Hochgreve B. Co.* 154 Wis. 448, 143 N. W. 189, and authorities there cited.  The right to control the details of the work is to be distinguished from such supervision or inspection as may be necessary to secure the ultimate result.  *Carleton v. Foundry & M. P. Co.* 199 Mich. 148, 165 N. W. 816.

It is clear from the record that the village reserved no right to control the details of the work. Not only that, but it appears that the contract was let in this manner for the express purpose of relieving the members of the committee from any responsibility in that respect. Thus, one of the members of the committee who made the arrangement with Kramer testified that "the bridge committee didn't care to be bothered to look after the day work and that was the reason we asked to have it done by the job, to know what we was going to pay for it, and settled finally." "Q. And can you tell us why it was you didn't hire day laborers to paint the bridge? A. Why, because Mr. Reick and myself on the committee we didn't want to look after the day-labor part of it to keep account of it day by day and that was the only reason we wanted to know what we was going to pay for the whole job rather than be bothered looking after it day by day labor." And again: "The $75 charge was simply the plan selected by me and the other member of the committee in order that we wouldn't be compelled to keep the hours on the work."

This indicates that the committee desired to give the job to a responsible person, one in whom they had confidence and one over whom they would be required to exercise no detailed supervision. It appears that what was desired or required to be done was talked over before the agreement. This is shown by the following testimony of the same witness:

"Well, I think all I told him was to clean the dirt off underneath the bridge, underneath the iron work there was a lot of dirt that had to be cleaned off first. Q. And then painted? A. That is all, and he should scratch off the old scales if there was any old paint. Q. That was the understanding originally? A. Yes, sir. Q. After that there were no more directions given? A. No. Q. He went ahead and started painting the bridge? A. He went ahead and started painting the bridge, yes."

Upon redirect examination the witness was asked:

"*Q.* Did you consider at the time that any other direc-
tions were necessary except to tell him to scratch off the old
scales and clean off the dirt and give one coat of paint to
the iron work; did you consider any other directions were
necessary under the circumstances? *A.* No. *Q.* Then you
gave him all directions that you deemed necessary in order
to have him carry on the work? *A.* Yes, sir."

This latter was a manifest attempt to show that the right
to control the details of the work remained with the village,
but that the direction to clean off the dirt, scratch off the
old scales, and give one coat of paint to the iron work was
all the directions deemed necessary by the committee. This
position, however, is untenable in view of the fact that the
understanding was had prior to the execution of the con-
tract, and prescribed the work which Kramer was expected
to do. It is not contended that any power was reserved on
the part of the committee or the village board to direct the
manner in which the dirt should be cleaned off or the scales
scratched off, or what part of the bridge should be painted
first, or the kind of a brush that should be used, or any
other detail that might arise in the prosecution of the work.
That was all left to Kramer.

In *Madix v. Hochgreve B. Co.* 154 Wis. 448, 143 N. W.
189, it is said:

"Other significant characteristics of an independent con-
tractor are that he is usually engaged in carrying on an
independent employment or business, and customarily con-
tracts to do a given piece of work for a specified sum of
money and is responsible for the result thereof, while a
servant usually works by the hour, day, week, or month,
and is not responsible for the result of the work beyond per-
forming his own labor in a workmanlike manner."

Here, Kramer undertook to do "a given piece of work
for a specified sum of money." He was responsible for the
result thereof. He was no doubt required to do the job in

a good workmanlike manner in order to entitle him to the stipulated compensation. The village could no doubt quarrel with him about the result, but the record is barren of any evidence to indicate that it could interfere with or direct the manner of accomplishing the result. · That it was customary for him to enter into such contracts is indicated by the testimony of the claimant, who said:

"He did other jobs on the basis of taking the work by the job. I do not know how many he might have had of such jobs. He always did the work himself. I never knew him in the last year prior to his death to take a job and have others help him with the work. I never knew that he took jobs on a contract basis where he hired helpers."

It is claimed that he was expected to do the work personally. We cannot see that that is very significant. Of course where it appears that the nature of the work is such that the employment of others is necessary to accomplish it, the conclusion that one who undertakes to do the work is an independent contractor may be more readily reached, where other circumstances render the situation doubtful. However, we do not regard it as a weighty consideration in the present case. But even though it were material, the testimony of one of the members of the committee who appeared, as before stated, on behalf of the claimant indicates that Kramer was at liberty to hire others if he desired. Thus:

"*Q*. Now was there any understanding with Mr. Kramer that he was required to do this work personally? *A*. No. *Q*. In your direct examination, Mr. Bauer, you stated that you had the understanding that Mr. Kramer was to do the work himself, and then in response to Mr. Langworthy you say there was no agreement to do it himself? *A*. There was no agreement to do it himself. *Q*. Would it have made any difference to you if you had known that he was to let this out to somebody else? *A*. No, it wouldn't have made any difference to us."

Some significance is sought to be attached to the fact that after Mr. Kramer was injured his son-in-law asked one of the members of the committee if it would be all right for him to complete the job, and that the village clerk reported the accident to the *Industrial Commission.* We cannot see how either incident can affect the legal relations resulting from the agreement. If the son-in-law desired to complete the work and was uncertain as to the arrangements between his father-in-law and the village, it was a mere matter of prudence for him to take the matter up with the committee. Certainly that incident cannot give character to the negotiations between the village and Kramer. And the fact that the village clerk notified the *Industrial Commission* of the accident is equally impotent for that purpose. The law requires employers to keep a record of accidents occurring to their employees, which record shall be available to the *Industrial Commission.* While the law does not expressly require a report to the *Industrial Commission,* such practice is consistent with the purpose of the statute, and in view of the fact that a forfeiture is attached for failure to comply, it is but prudent for those charged with responsibility to conform to the requirement, even though there may be doubt whether the one injured sustains the relation of an employee or independent contractor. At any rate, such subsequent conduct cannot be permitted to influence or vary the legal effect of a previous plain and unambiguous agreement. Cases involving facts very similar, if not identical, with those here presented have frequently been before the courts, and the status of the one undertaking the employment under such circumstances has almost universally been held to be that of an independent contractor, as a reference to the following cases will show: *Petrow v. Shewan* (Neb.) 187 N. W. 940, 942; *Gross v. Michigan I. & C. Co.* (Mich.) 189 N. W. 4, 5; *Holbrook v. Olympia H. Co.* 200 Mich. 597, 166 N. W. 876; *Odle v. Charcoal Iron Co.* 217 Mich.

469, 187 N. W. 243, 245; *Zeitlow v. Smock,* 65 Ind. App. 643, 117 N. E. 665; *Francis v. Johnson,* 127 Iowa, 391, 101 N. W. 878; *Finkelstein v. Balkin,* 103 N. Y. Supp. 99; *Southwestern T. & T. Co. v. Paris,* 39 Tex. Civ. App. 424, 87 S. W. 724; *Prince v. Schwartz,* 190 App. Div. 820, 180 N. Y. Supp. 703. The distinction between this case and those cases where employees are compensated by the piece for their work is so manifest as to require no elaboration.

Because it must be held as a matter of law that the relation existing between the deceased and the village was that of proprietor and independent contractor and not that of employer and employee, it follows that the award cannot stand.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment vacating the award of the *Industrial Commission.*

CROWNHART, J. (*dissenting*). By the workmen's compensation act (sub. (1), sec. 2394—7, Stats. 1921) an employee is defined as "Every person in the service of . . . any village . . . under any appointment, or contract of hire, express or implied, oral or written."

The claimant here is the widow of John P. Kramer, who was employed by the village of *Weyauwega* to paint a bridge by the job for $75. He was an old man, the village "jack of all trades," a painter and carpenter in particular, who did odd jobs around the village. He hired no help and did all the work himself. This had long been his custom, to the knowledge of the village authorities.

In passing the compensation act the legislative idea was plainly expressed to pay compensation to all workmen under the act who are accidentally injured in the course of their employment. The act speaks of employers and employees. The old terms of master and servant are studiously avoided. Here is a new idea come into birth in Wisconsin's law— the law of compensation for workmen injured through

industrial hazards.   It should be remembered that there are
but two classes in the act, employers and employees.   The
compensation idea—the purpose of the law—is all-important
in construing it.   The term "contractor" is used but once in
the law, and then it expresses the idea of one who himself
is an employer.   I feel the court has gone far afield to put
a common workman outside the pale of the law because,
perchance, he does a piece of work by the job instead of by
the hour, by the day, or by the month.   The common-sense
idea of a contractor is one who himself is the director and
manager in charge of a contract, wherein he employs work-
ingmen to do the manual labor.   It assigns a false dignity to
a common workman who does a small piece of work by his
own labor, without assistants, to call him a contractor.   Not
every person who enters into a contract to do a piece of
work is a contractor, in the common acceptance of the term,
for any man working by the day may be working in pursu-
ance of a contract.   Thousands upon thousands of work-
men doing work by the piece in Wisconsin are working
under contract.   It is not unusual to let out small jobs to
individual workmen by contract where supervision is un-
necessary because the work may be inspected before pay-
ment to see that it is up to standard.   To avoid keeping the
workman's time and to increase production this is quite the
usual thing.   Supervision of details is unnecessary in these
small matters.   An inspection after the work is done is all
that is required.

Here we find a common workman who was not, and
never had been, an employer—a contractor.   The *Industrial
Commission* found that

"At a meeting of the village board on May 2, 1921, the
trustees directed the committee on streets and bridges to
have the bridge painted.   By agreement of the committee
members they spoke to the different men in the village of
*Weyauwega* who were thought available for work of this
sort, among them Mr. Kramer.   Kramer had done painting

of one sort and another for many years, sometimes by day work and at other times by the job. He never employed others to work with him when he had painting to do by the job, but always did the work in person. He was known to the members of the committee as a careful, competent, dependable workman. The members of the committee were desirous, so far as possible, of relieving themselves from the necessity of overseeing the work as it progressed or keeping time records. The materials were to be furnished by the village, and the only obligation of Mr. Kramer was to do the work. While there was no express agreement that he was to do the work in person, the committee's acquaintance with him and knowledge of how he had done work for others led them to understand that he would perform all of this work in person, and his manner of proceeding with the work leads to the conclusion that he in fact intended to do the work himself. It was a job which Kramer and the committee members estimated at the time as requiring about two weeks' time for one man."

I feel that in construing the compensation act we should do so with the idea of carrying out its manifest purpose. To adopt a technical construction of a word to defeat that purpose works a great wrong, as in this case. It emasculates the legislative intent. It defeats the ends of justice. The legislature *ex industria* attempted to put employees of municipalities under the act. Here the municipality, with commendable prudence, insured its risk, and we may be assured it had no evasive purpose in hiring this employee by the job. But this decision leaves the door open to others, less humane, to evade the purposes of the law. By this decision the court denies the benefits of the act to those entitled thereto, as I view the opinion. The authorities cited in support of the decision, almost without exception, are not applicable to the situation here nor to compensation acts. They treat of a contractor under the old common law, or under statutes dissimilar to the compensation act. Many words will not make the situation plainer.

The statute provides that the findings of fact of the

*Commission,* acting within its powers, in the absence of fraud, shall be conclusive. The *Commission* found that Kramer was an employee on sufficient evidence.

I think the decision of the *Industrial Commission* was right and clearly within its jurisdiction. The judgment of the circuit court affirming the award of the *Industrial Commission* should therefore be sustained.

For the reasons stated, I respectfully dissent from the opinion of the court.