KOLB and others, Respondents, vs. HAYES, Appellant.

*September 16—October 11, 1927.*

*Master and servant: Independent contractors: Torts: Damages resulting from performing inherently dangerous work: Use of explosives in road construction: Liability of principal contractor: Liability of surety.*

1. Where a road contractor having a general contract to lay a state trunk highway employed, by special contract, an excavator to remove rocks and to do grading preparatory to the paving of the highway, and such excavator, in blasting rock with dynamite, caused damage to neighboring property, the mere fact that the general contractor was present and offered suggestions as to the blasting did not make him liable for such damage.   p. 46.

2. All the details of the rock removal preparatory to road paving being under the control of the independent contractor, who might or might not use dynamite as he elected, the employer of the independent contractor was not liable for such damage on the ground that the work was inherently dangerous. pp. 47–50.

3. A proprietor or a principal contractor is not liable for the acts of an independent contractor even if the contract calls for the removal of rock by blasting operations, as the use of

Kolb v. Hayes, 194 Wis. 40.

dynamite in the ordinary course of construction is not inherently dangerous, and damages to adjoining owners do not necessarily or naturally result from doing the work in a reasonably prudent and careful manner. p. 49.

4. In this case it is *held* that the damages to the plaintiff were produced either by the choice of improper means to remove detached rock or by the negligent or improper use of the means employed, and that in either event the principal contractor is not liable. p. 50.

5. Sub. (2), sec. 289.16, Stats., relative to maintaining actions on the surety bonds of contractors, has no application to an action to recover damages for the tortious act of a contractor or subcontractor. pp. 50, 51.

APPEAL from a judgment of the circuit court for Dodge county: FRED BEGLINGER, Judge. *Reversed.*

On July 22, 1924, defendant entered into a written contract with the county of Dodge whereby he undertook to excavate for, construct, and pave a stretch of highway known as highway number 28 or the Beaver Dam-Horicon road, Dodge county, in accordance with the uniform standard printed specifications of the state highway commission.

On July 29, 1924, the defendant entered into a written contract with one Frank Braman whereby Braman undertook to do the necessary excavation work in connection with the paving of highway number 28. By his contract Braman agreed—

"to move approximately 7,700 cubic yards of excavation on the Beaver Dam-Horicon and the Beaver Dam-Waupun roads in Dodge county for a unit price of 66c. (sixty-six cents). . . .

"The above mentioned excavation to be done promptly and in a workmanlike manner according to the plans and specifications furnished by the highway department of the state of Wisconsin or the county of Dodge.

"This agreement by and between Frank Braman and Frank D. *Hayes,* said *Hayes* reserves the right, in case the progress of said Braman is not reasonably satisfactory, to hire the work done entirely or in part by others and charge the same to said Braman."

The specifications annexed to the contract between Dodge county and *Hayes* provided:

"The contractor and his employees shall conduct the work in such manner as to fulfil all the requirements of the state, county, and municipal laws and ordinances applying to the work in hand, and shall take such necessary precaution as will guard against accident or loss of life."

The contract also contains a general clause by which the contractor agrees to indemnify and save harmless the state department and all its officers, agents, and employees from any liability for or on account of any injuries or damages received or sustained by any person or from liability in consequence of any neglect in safeguarding the work; liability for infringement of patent, trade-mark, or copyright, and other matters not material. Under the heading of "Construction Details" the specifications contained the following provision, under the subtitle "Excavation and Embankment," after making provision for clearing and grubbing, excavation, and filling, and describing what shall constitute hard-pan:

"Loose rock excavation shall include all material such as shell rock or detached fragments that cannot be loosened with a road plow and six (6) powerful horses, but can be loosened with a rooter plow and six (6) powerful horses, although blasting may be resorted to in order to expedite the work with either kind of plowing. Detached boulders from one (1) cubic foot up to one-half (½) cubic yard in size shall be classified as loose rock. The engineer in charge shall determine the percentage of loose rock as the work progresses.

"Solid rock excavation shall include all rock found in ledges, in masses, or boulders measuring more than one-half (½) cubic yard, and which can only be removed by the use of bars and sledges or blasting.

"The hard-pan, loose and solid rock clauses do not apply to any job unless a classified bid has been asked for, and do not apply to old macadam and gravel surfaces."

The proposal submitted by *Hayes* contained no classified bid. He was to be paid seventy cents per cubic yard for excavating and $1.29 per square yard for concrete.

Braman entered upon the performance of his contract and did the work of subgrading in accordance with the specifications relating thereto, being paragraph 68 and part of paragraph 62. On September 2d the defendant appeared upon the scene with his paving gang and paving machine to prepare for and proceed with the paving operations. Braman's contract did not require him to do what is called fine grading. When the defendant's men were bringing the grade up to the prescribed level and doing what is called fine grading, they discovered a rock which protruded above the surface of the subgrade within the limits of the highway upon which the concrete slab was to be placed. The rock was about $4\frac{1}{2}$ x 5 feet in its flat area and about two feet thick and was a detached limestone or granite boulder imbedded in the ground, lying in a diagonal position. The specifications required that the rock should be removed. At the time when the boulder was discovered its size was unknown. The defendant's men were ordered to dig around the rock by his foreman. Its size was disclosed and it was apparent that the removal of the rock was a part of the work contracted to be done by Braman. Braman had left the work and was engaged in work upon the other job and was requested by the defendant to return and complete the work. Braman sent his foreman and men, teams were hitched to the rock, but they were unable to pull it out. Thereupon Braman's foreman decided to blast it. He procured some dynamite, placed one stick of dynamite on top of the boulder, procured a shovelful of earth and placed it on top of the boulder, lighted the fuse and ran away. This blast did not crack the rock. However, it caused fragments of stone to fly and panes of glass in plaintiffs' greenhouse were broken. The defendant thereupon sug-

gested to Braman's foreman that he place some branches over the next charge so as to prevent the stones flying. The foreman replied "I know my business" and proceeded to light the fuse to the second charge, and the defendant left. The second charge was prepared by tying sticks of dynamite together, placing them on top of the boulder, putting two shovels of damp clay on top, covering it over with a wet burlap bag, and then attaching a fuse. The foreman remarked "I will give it enough." There is a dispute as to whether two, three, or four sticks of dynamite were used by Braman's foreman. The second blast broke the boulder into two large pieces and many small ones and it is alleged did the damage complained of.

Many other facts were presented and argued, but in the view that we take of the case we do not find it necessary to state or consider them.

The jury found (1st) that the blasting on September 2, 1924, of the large stone in the highway in the vicinity of plaintiffs' greenhouses was inherently dangerous to plaintiffs' adjacent property; (2d) that *Hayes* failed to exercise ordinary care to avoid injury from the blasting operations; (3d) that the defendant *Hayes'* failure to exercise ordinary care was the proximate cause of plaintiffs' injuries; (4th) that the defendant *Hayes,* in making his contract with Braman for the excavation of the highway adjacent to plaintiffs' property, reserved to himself the right of control over the operation of removing from the highway the stone referred to in the first question herein with respect to the manner and means of such removal; (5th) that the subcontractor Braman, or his employee who personally blasted out said stone, failed to exercise ordinary care with respect to using reasonable precautions to avoid injury; and (6th) that the failure of Braman or his employee to exercise such caution was a proximate cause. The other questions relate to damages.

Judgment was entered in favor of the plaintiffs against the defendant for $4,500, from which the defendant appeals.

For the appellant there were briefs by *Olwell & Brady* and *George A. Gessner,* all of Milwaukee, and *Bagley, Spohn & Ross* of Madison, and oral argument by *Mr. Frank A. Ross* and *Mr. Gessner.*

*H. J. Gergen* and *C. A. Markham,* both of Beaver Dam, for the respondents.

ROSENBERRY, J.    That the subcontractor Braman was within the case of *Weyauwega v. Industrial Comm.* 180 Wis. 168, 192 N. W. 452, an independent contractor, is not open to substantial dispute.    While it is not conceded, the principal argument of the plaintiffs is based upon the proposition that the defendant is liable regardless of whether or not the blasting was done by an independent contractor.    We shall not restate the principles of law so carefully and thoroughly reviewed in the *Weyauwega Case.*    For the benefit of those interested in the historical development of the doctrine, reference is made to *Press v. Penny* (242 Mo. 98, 145 S. W. 458)', 18 A. L. R., note p. 801.    See, also, note 23 A. L. R. 984.    Plaintiffs' claim that the defendant is liable even though Braman was an independent contractor rests upon four propositions: first, defendant is liable as an individual wrongdoer or at least as a joint tortfeasor; second, defendant is also liable because the injuries resulted directly from blasting authorized by him; third, the blasting being inherently dangerous, the defendant is liable even if the blasting was solely the act of an independent contractor; and fourth, the defendant is liable even if the blasting was done by an independent contractor, on the additional ground that the statute expressly authorizes such action.    Plaintiffs' argument in support of the first and second propositions is based largely upon the language of paragraph 62, which has been referred to and partly set out in the statement of

facts.   By the express language of that provision it does
not apply to any job "unless a classified bid has been asked
for."   The only proposal submitted by *Hayes* relates to
"earth excavation," no bid was submitted for hard-pan ex-
cavation, loose-rock excavation, or solid-rock excavation;
therefore the language of the contract on which plaintiffs'
argument is based drops from the case.   It may be said
here that in fairness to the court, counsel should have called
attention, in connection with their quotation from para-
graph 62, to the fact that it did not by its terms apply until
a classified bid had been asked for, and not present the case
as if the exception did not appear in the contract.   In our
view of the case, however, the result would be the same
whether the quoted part of paragraph 62 applied or not.

The second ground upon which the first and second prop-
ositions are rested is that the presence of the defendant
*Hayes* and what he did at the time and place in question
makes him jointly liable for injuries resulting from the
blasting operations.   It appears clearly that some of *Hayes'*
men shoveled around the rock; that after the first blast they
investigated to see if it was broken and did some little work
in the way of removing earth; that *Hayes* was somewhere
within thirty to fifty yards away and that he volunteered a
suggestion to Braman's foreman as to the manner in which
the second blast should be placed.   Braman being an inde-
pendent contractor, *Hayes* had no right of control over the
operations.   When he attempted to make a suggestion he
was rebuffed by Braman's foreman, who told him that he
knew his business.   Braman's foreman did not accept his
advice or permit him to take any part in the operation.
Braman being an independent contractor, the defendant had
no more right of control over the method by which the work
should be done or right to supervise the details of doing the
work than a third person.   His mere presence as a spectator
at the scene of the accident cannot make him liable for the

negligent and tortious acts of his independent subcontractor. The first and second propositions contended for are not supported.

The plaintiffs very strongly urged the proposition that under the circumstances of this case, the blasting being inherently dangerous, defendant is liable even if the blasting is solely the act of an independent contractor, citing *Nemet v. Kenosha,* 169 Wis. 379, 172 N. W. 711; *Norwalk Gaslight Co. v. Norwalk,* 63 Conn. 495, 28 Atl. 32; 23 A. L. R. 1086. That a proprietor or principal contractor cannot entirely relieve himself from liability for the acts of a subcontractor although the subcontractor is an independent contractor must be conceded. There are certain duties which the proprietor or principal contractor cannot delegate, and if he attempts to delegate them and in the performance of the work third persons sustain injuries, the proprietor or principal contractor remains liable. The cases relating to non-delegable duties of proprietors and principal contractors are collected and analyzed in a note to *Drennen Co. v. Jordan* (181 Ala. 570, 61 South. 938), 23 A. L. R. 981, 984, 1084. Among these are duties imposed by statutes, municipal ordinances, or by-laws and other departmental regulations having the force and effect of law, the duty to refrain from impairing the lateral support of adjoining premises, the duty to refrain from creation or maintenance of a nuisance, and other matters of like character.

In support of their third proposition plaintiffs again rely upon the language of paragraph 62, which, as already pointed out, has no application in this case and is no part of the contract.

The situation here is that the defendant contracted with Braman to do the subgrading according to the specifications. The specifications required the grade to be brought to a certain level. In making the grade to that level it was necessary to dispose of the rock in question. At the time

of the making of the contract, Braman, *Hayes,* nor the county did not know that the rock was there. In the region in question it is a matter of common knowledge that detached rock of varying size and degrees of hardness may be found. It also appears that blasting is one of the usual and ordinary means of breaking up rock for the purpose of removal. Under such circumstances a proprietor or principal contractor may be required to anticipate that such usual and ordinary means will be used. The broad principle upon which the liability of a proprietor or principal contractor may rest for the acts of an independent contractor may be stated thus:

"A person causing something to be done, the doing of which casts upon him a duty, cannot escape from the responsibility attaching to him of seeing that duty performed by delegating it to a contractor." *Dalton v. Angus,* L. R. 6 App. Cas. 740, 829, 10 Eng. Rul. Cas. 98.

This is in the nature of an exception to the general rule that a proprietor or principal contractor is not liable for the negligence of an independent contractor. The exception is stated thus in *Hackett v. Western Union Tel. Co.* 80 Wis. 187, 193, 49 N. W. 822:

"Nor does the case come within the well-recognized exception to such general rule, to the effect that where the performance of such contract, in the ordinary mode of doing the work, necessarily or naturally results in producing the defect or nuisance which causes the injury, then the employer is subject to the same liability to the injured party as the contractor."

The rule was applied in *Smith v. Milwaukee B. & T. Exchange,* 91 Wis. 360, 64 N. W. 1041. In that case a contractor permitted a brick to fall from a building under construction which struck and injured the plaintiff. The court said:

"It is evident that the falling of the brick was collateral to the contract, and was, if negligence at all, the result of

negligent acts on the part of some of the workmen employed by the contractors, and was not the necessary or natural result of any act which the contractors were employed to do. In this situation the owner is not liable, at least in the absence of some other distinct ground of liability."

The doctrine is restated in *Carlson v. Stocking*, 91 Wis. 432, 65 N. W. 58. It cannot be argued that a contract to do ordinary earth excavating under a contract for subgrading presents a situation where, by the act to be done under the contract, a nuisance or defect will naturally or necessarily be created. Such a case would arise if the excavating disturbed an adjoining proprietor's right to lateral support or required him to do some other act which fell within the class of cases already referred to as inherently dangerous. The weight of authority is that a proprietor or principal contractor is not liable—we may say here parenthetically that liability of a proprietor for an act of a contractor and liability of a principal contractor for an act of an independent subcontractor rest upon the same grounds —even if the contract requires the doing of work, as for instance the removal of solid rock, which would require blasting operations. It has been held that the principal contractor cannot be charged with liability, where work of that character has been sublet, on the ground that blasting would necessarily produce such injuries or was dangerous in itself or intrinsically dangerous. 18 A. L. R. p. 853, note, and cases cited. It is a matter of common observation that blasting operations are carried on in the midst of centers of population without damage to adjoining proprietors. The distinction seems to be that the injury must be such as necessarily or naturally results from the doing of the work, in other words, be inherently dangerous, in order to charge the principal contractor with liability. If it is the result of mere negligence in the use of the explosive, the principal contractor is not liable. It is clear and undisputed upon the facts in this case that the determination of what means

should be used to remove the rock; the setting off of the blast; the amount of the explosive to be used,—in fact every detail of the operation,—was wholly under the control of the subcontractor. The mere use of dynamite in the ordinary course of construction operations, in the absence of some other circumstance, cannot make a principal contractor liable for the tortious and negligent acts of his subcontractor in the use of that instrumentality within the doctrine of the cases cited. No such danger "inheres" in the situation presented by the facts in this case. The consequences which the plaintiffs claim resulted from the blast are not such as necessarily or naturally result from doing of the work in a reasonably prudent and careful manner. The results complained of were produced either by the choice of improper means or by the negligent and improper use of the means employed. The principal contractor is not liable in either case.

Plaintiffs' fourth proposition, that sub. (2), sec. 289.16, Stats., makes the defendant liable, is untenable. The section provides:

"Any party in interest may, within one year after the completion and acceptance of said contract, maintain an action in his own name against such contractor and the sureties upon such bond required by this section for the recovery of any damages he may have sustained by reason of the failure, refusal or neglect of said contractor to comply with the aforesaid terms and conditions of said contract or any of the terms and conditions of the contract between said contractor and subcontractors."

The bond in question is required and given for the purpose of securing performance of the contract.

In *Southern S. Co. v. Metropolitan S. Comm.* 187 Wis. 206, 201 N. W. 980, 204 N. W. 476, it was held that sec. 289.16, there described as 3327a, limited recovery on the bond to items for which the claimant would have had a lien under sec. 3314. It has never been held, and so far as we know never been contended, that there was a lien for

damages arising from negligent or tortious acts of a con-
tractor or subcontractor.   The statute has no application to
the case at bar.

In view of the conclusion which we have reached upon the
principal question involved in the case it is unnecessary for
us to consider other questions, relating principally to dam-
ages, which are discussed in the briefs of counsel.

*By the Court.*—Judgment appealed from is reversed, and
cause remanded with directions to dismiss the plaintiffs'
complaint.