MEDLEY, Respondent, vs. TRENTON INVESTMENT COMPANY,
Appellant.

*April 7—May 12, 1931.*

32

For the appellant there was a brief by *Hanitch, Hartley, Johnson & Fritschler* of Superior, and oral argument by *John C. Fritschler.*

For the respondent there was a brief by *Curran & Sher* of Superior, and oral argument by *R. E. Sher.*

NELSON, J.   The defendant earnestly contends that the court erred in denying its motions for a directed verdict, for judgment notwithstanding the verdict, to change the answers of the jury, and for a new trial.   The denial of defendant's motion for a directed verdict and for judgment notwithstanding the verdict may be considered together. Defendant's contentions are based upon the following propositions: (1) The defendant is not liable for the negligence of Bennett because McCabe had no authority to contract with him to do the work of exterminating bedbugs in the Smith apartment.   (2) Bennett, in any event, was an independent contractor and the defendant is not liable for his negligence.   (3) The performance of the work of exterminating bedbugs as ordinarily done is not so inherently dangerous as necessarily and naturally to result in injury to others.

We do not consider defendant's first proposition sound. While it is true that McCabe was not expressly authorized to employ any one to exterminate bedbugs from defendant's building, we think that, as defendant's rental agent, he was impliedly authorized so to do.   McCabe had express authority to rent defendant's building, which included the Smith apartment, and we think he had the implied authority to do such things as were reasonably necessary and proper, either to obtain tenants or to retain those already in the building.   We entertain no doubt that a rental agent has implied authority to hire people to do such simple and inexpensive things as cleaning the premises, making them attractive and habitable by destroying vermin therein, or making small and necessary repairs to the premises.   It seems to be well settled that every delegation of authority, whether general or special, carries with it implied authority to do all of those acts naturally and ordinarily done in such cases which

are reasonably necessary and proper to be done in order to carry into effect the main authority conferred. Mechem, Agency (2d ed.) § 715. This rule is fully recognized by this court. In *Voell v. Klein,* 184 Wis. 620, 200 N. W. 364, it was said: " 'The creation of an agency carries with it the usual and appropriate means of accomplishing its object and clothes the agent with such authority as is proper and necessary to effectuate its purposes.' "

So we conclude that the court did not err in denying defendant's motion for a directed verdict for the reason that McCabe had no authority to employ Bennett.

As to defendant's second proposition, that Bennett was an independent contractor, we conclude, after carefully considering the evidence and the decisions of this court, that such was undoubtedly his relation to the defendant. Bennett was a resident of the state of Minnesota and was doing business under the name of "Twin Ports Exterminating Company." His business was clearly of a nature requiring special knowledge and skill. McCabe did not know of the particular manner in which the work was to be performed and very clearly did not retain any right to control the details in respect to the performance of the work. Under the decisions of this court it seems clear that Bennett was an independent contractor. Since the subject of independent contractor has been so fully and carefully considered by this court in recent decisions, we deem it unnecessary further to discuss the subject. *Weyauwega v. Industrial Comm.* 180 Wis. 168, 192 N. W. 452; *Kruse v. Weigand,* 204 Wis. 195, 235 N. W. 426.

But it does not follow because the relation between Bennett and the defendant was that of independent contractor and employer that the defendant may not be liable. While the broad general principle is to the effect that a proprietor or principal contractor is not liable for the negligence of an independent contractor (*Hackett v. Western Union Tel. Co.* 80 Wis. 187, 49 N. W. 822; *Kolb v. Hayes,* 194 Wis. 40,

215 N. W. 578), the rule is subject to a well established exception, which has been stated as follows: "Where the performance of such contract in the ordinary mode of doing the work necessarily or naturally results in producing the defect or nuisance which causes the injury, then the employer is subject to the same liability to the injured party as the contractor." *Hackett v. Western Union Tel. Co.* and *Kolb v. Hayes, supra.* In *Wertheimer v. Saunders,* 95 Wis. 573, 578, 70 N. W. 824, it was said: "Where the act undertaken, from its very character, is either a nuisance, or one dangerous to others, the one undertaking it is not released from responsibility to any one injured thereby, although he has entered into a contract with some one to perform it, and the injuries occurred through the negligence of the latter. *Lasker Real Estate Asso. v. Hatcher* (Tex. Civ. App.) 28 S. W. 404; *Glickauf v. Maurer,* 75 Ill. 289."

As between owners and principal contractors and third persons, it seems clear, under our decisions, that the owner or principal contractor is not liable for the negligent acts of an independent contractor unless the act to be done or the work to be performed is inherently dangerous or naturally or necessarily creates the nuisance or the defect or necessarily or naturally results in injury. In *Smith v. Milwaukee B. & T. Exchange,* 91 Wis. 360, 64 N. W. 1041, a contractor negligently permitted a brick to fall resulting in injury to the plaintiff, but liability of the owner was denied on the ground that the falling of the brick was not "the necessary or natural result of any act which the contractors were employed to do." In *Kolb v. Hayes, supra,* speaking of *Carlson v. Stocking,* 91 Wis. 432, 65 N. W. 58, it was said: "It cannot be argued that a contract to do ordinary earth excavating under a contract for sub-grading presents a situation where, by the act to be done under the contract, a nuisance or defect will naturally and necessarily be created." In *Kolb v. Hayes, supra,* it was held that the

principal contractor was not liable for an injury resulting from blasting with dynamite done by an independent subcontractor, because the injury was not such as necessarily or naturally results from the doing of such work. This court held, in that case, that blasting with dynamite was not "inherently dangerous" and that "the consequences which the plaintiffs claim resulted from the blast are not such as necessarily or naturally result from doing of the work in a reasonably prudent and careful manner."

All of the cases just cited, with the exception of the *Wertheimer Case,* involved situations arising between owners or principal contractors and third persons. In none of these cases did a relation exist in which the owner or principal contractor owed a special duty to the persons injured. In the case at bar the relation between the defendant and Mrs. Medley was that of landlord and tenant. In that situation it seems quite clear, under our decisions, that the defendant owed to her a special duty to use reasonable care to protect her from injury on introducing into the building a dangerous gas, for the purpose of ridding the Smith apartment of bedbugs, and that, although such work was done by an independent contractor, the defendant became liable for the performance of such work in an insufficient or negligent manner. Such, we believe, is the clear effect of the holding in *Wertheimer v. Saunders, supra.* In that case the landlord undertook, through an independent contractor, to remove an old roof from a building occupied by the plaintiff as tenant and to construct a new roof thereon. While part of the roof was removed and the hole occasioned thereby unprotected, rains poured into the building damaging the plaintiff's property. It appears from the opinion of Mr. Justice PINNEY that many authorities, both English and American, were considered. Numerous authorities and the holdings therein were cited and digested. A number of quotations from the decisions of other courts are found in

the opinion. It was stated that (p. 582) : "In *Pickard v. Smith,* 10 C. B. N. s. 470, the precise point in this case was stated and considered, and it was said that 'If an independent contractor is employed to do a lawful act, and in the course of the work he or his servants commit some casual act of wrong or negligence, the employer is not answerable. That rule is, however, inapplicable to cases in which . . . the contractor is intrusted with the performance of a duty incumbent upon his employer, and neglects its fulfilment, whereby an injury is occasioned.' " *Gray v. Pullen,* 5 Best & S. 970, is referred to as authority for the following principle of law :

"Where work is being executed from which danger may arise to others, and it thereby becomes incumbent on the party doing or ordering it to be done to take measures to prevent damage resulting to others, he cannot divest himself of liability by transferring the duty to a contractor."

The conclusion reached by the court in that case is as follows :

"Inasmuch, therefore, as the defendants, as landlords, owed the plaintiff, their tenant, a special duty, growing out of their relation as such, to use reasonable care to protect the plaintiff's property in the building from injury by the elements while repairing the roof or putting on a new one, as they had undertaken or assumed to do at his request, they became liable for the performance of such work in an insufficient and negligent manner, although the work was so performed for them by independent contractors. None of the cases cited by the defendants' counsel appear to have been cases where the landlord, or person contracting for doing the work, owed a special duty to the party injured that it should be done with reasonable care to avoid such injury."

The *Wertheimer Case* was followed thereafter in *Wilber v. Follansbee,* 97 Wis. 577, 72 N. W. 741, 73 N. W. 559, in which the landlord was held liable to a tenant who was injured by falling over some rubbish left by the independent

contractor in the hallway. The rule laid down by the court in the *Wertheimer Case* was approved, the court saying:

"On this point the case is ruled by the recent case of *Wertheimer v. Saunders*, 95 Wis. 573, 70 N. W. 824. In that case it was held, on full consideration, that the landlord, in making repairs and improvements to the demised premises, owes a duty of reasonable care to the occupying tenants, which he cannot escape by placing the work with an independent contractor; especially if the work to be done is attended with danger to the tenants. Evidently, the accomplishment of the improvement and repairs contemplated would render some degree of danger imminent to such as should use the stairways and halls during its progress. So, the fact that the work was being done by an independent contractor was entirely irrelevant to the question of the defendant's liability. This is entirely aside from the question of the defendant's liability to her tenant to make repairs. She made them voluntarily, and for the advancement of her own purposes. It is immaterial whether the hall and stairway were a part of the premises demised to the plaintiff. They were intended and used for the convenience of all the tenants of the building. The plaintiff had the undoubted right to use the stairway for a convenient way of access to and egress from the apartments leased by her. The defendant had no right to make the way inconvenient or dangerous to her use."

See, also, *Alexis v. Pittinger*, 119 Wash. 626, 206 Pac. 370, 29 A. L. R. 733, and note; *Hicks v. Smith*, 158 App. Div. 299, 143 N. Y. Supp. 136; *Sulzbacher v. Dickie*, 6 Daly (N. Y.) 469; *Paltey v. Egan*, 200 N. Y. 83, 93 N. E. 267; *O'Rourke v. Feist*, 42 App. Div. 136, 59 N. Y. Supp. 157; *Eberson v. Continental Inv. Co.* 130 Mo. App. 296, 109 S. W. 62.

The *Wertheimer* and *Wilber Cases* just considered are analogous to the case at bar and the principles of law therein stated seem to rule the present controversy. The defendant, through its agent McCabe, authorized Bennett to enter the Smith apartment for the purpose of exter-

minating bedbugs. That McCabe did not know a dangerous gas was to be used does not excuse his failure to inquire as to the method which Bennett proposed to employ to exterminate the bedbugs. That the use of gas for such purpose was dangerous unless proper precautions were taken to make the premises air tight so that the gas could not escape to other parts of the building, or unless the tenants occupying other parts of the building were notified and warned as to the presence of the gas in the Smith apartment, so that they might temporarily vacate the parts of the building occupied by them and avoid the danger, seems clear beyond question. See *Odell v. Cleveland House Ltd.* (K. B. Div.) 102 L. T. Rep. (Eng.) 602; *Norwalk Gaslight Co. v. Norwalk,* 63 Conn. 495, 28 Atl. 32; *Ohio S. R. Co. v. Morey,* 47 Ohio St. 207, 24 N. E. 269; *Smith v. Bank of Commerce & T. Co.* 135 Tenn. 398, 186 S. W. 465, 18 A. L. R. 788; and numerous cases cited in note to 23 A. L. R. 1016.

We therefore conclude, under the circumstances shown by the evidence, that the defendant, as landlord, owed to the Medleys, its tenants, a duty to use reasonable care to protect them from injury when it introduced into the building a dangerous gas for the purpose of exterminating bedbugs, and that, although such work was done by an independent contractor, the defendant was liable for the performance of such work in an insufficient and negligent manner. While there is no evidence tending to show that McCabe knew that a dangerous gas was to be employed by Bennett in the work of exterminating bedbugs, it was his duty to ascertain the nature of the agency to be employed for such purposes, the manner of the performance of the contemplated work, and then to use reasonable care to protect the tenants in the building from damage or injury.

Having reached the foregoing conclusion, we deem it unnecessary to consider the other questions raised by the defendant.

*By the Court.*—Judgment affirmed.