# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP2085 |
| COMPLETE TITLE: | Kelli Brandenburg and Bruce Brandenburg, |
| |     Plaintiffs-Appellants, |
| |   v. |
| | Briarwood Forestry Services, LLC, |
| |     Defendant, |
| | McMillan-Warner Mutual Insurance Company and |
| | Robert Luethi, |
| |     Defendants-Respondents-Petitioners. |

|  |
|---|
| REVIEW OF A DECISION OF THE COURT OF APPEALS<br>348 Wis. 2d 265, 831 N.W.2d 825<br>(Ct. App. 2013 – Unpublished) |

| | |
|---|---|
| OPINION FILED: | June 12, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 15, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|  COURT: | Circuit |
|  COUNTY: | Trempealeau |
|  JUDGE: | John A. Damon |

| | |
|---|---|
| JUSTICES: | |
|  CONCURRED: | |
|  CONCUR/DISSENT: | ABRAHAMSON, C.J., BRADLEY, J., PROSSER, J., concur in part; dissent in part. (Opinion filed.) |
|  NOT PARTICIPATING: | |

ATTORNEYS:

For the defendants-respondents-petitioners, the cause was argued by *Thomas Terwilliger*, with whom on the briefs was *Timothy J. Burnett* and *Terwilliger, Wakeen, Piehler & Conway, S.C.*, Wausau.

For the plaintiffs-appellants, the cause was argued by *Dan Arndt*, with whom the brief was *Emily Ruud* and *Arndt, Buswell, & Thorn S.C.*, Sparta.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2012AP2085
(L.C. No. 2011CV57)

STATE OF WISCONSIN        :       IN SUPREME COURT

Kelli Brandenburg and Bruce Brandenburg,

       Plaintiffs-Appellants

   v.

Briarwood Forestry Services, LLC and Jeffrey L. Steinke,

       Defendants,

McMillan-Warner Mutual Insurance Company and Robert Luethi,

       Defendants-Respondents-Petitioners.

**FILED**

**JUN 12, 2014**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 N. PATRICK CROOKS, J. The question we address in this case is whether Robert Luethi, who hired an independent contractor to spray herbicide on his property, may be held liable to his neighbors, the Brandenburgs, for the extensive, permanent damage they claim the spraying caused to 79 trees on adjoining property. Bruce Brandenburg, who owned property at the top of a steep slope above Luethi's pasture, claimed damage to all eight trees on his land; Kelli Brandenburg, who also

owned property at the top of the slope, claimed damage to 71 of 115 trees on her land.

¶2    More specifically, we must determine whether this case falls into one of the exceptions to the well-settled independent contractor rule that states that, in general, "one who contracts for the services of an independent contractor is not liable to others for the acts of the independent contractor."[1]

¶3    Under one of those exceptions, the "inherently dangerous activity" exception, an employer of an independent contractor may be liable for the torts of an independent contractor if the activity of the independent contractor is inherently dangerous.   This exception is what the parties disagree about.  Plaintiffs say the exception is good law and it applies here because this activity is inherently dangerous. Luethi says that it is not good law and does not apply here. Further, he argues that the exception is unworkable and should be altered or abandoned altogether.

¶4    The "inherently dangerous" exception has long been recognized in treatises, in our case law and in case law from other jurisdictions.   The test for whether an activity is inherently dangerous has two parts. An activity is inherently dangerous 1) if the activity poses a naturally expected risk of

---

[1] Lofy v. Joint Sch. Dist. No. 2, 42 Wis. 2d 253, 263, 166 N.W.2d 809 (1969).

harm and 2) if it is possible to reduce the risk of the activity to a reasonable level by taking precautions.[2]

¶5 For the reasons explained below, we see no reason to abandon our precedent concerning the "inherently dangerous" exception. It is a widely accepted and long-established rule of negligence law that is rooted in good policy. The rule imposes liability on the parties who are in the best position to take precautions to avoid harm to third parties where the activity to be done is inherently dangerous.

¶6 We therefore turn to the exception's application. In some negligence cases, including somewhat unusual negligence claims such as the one against Luethi, "[w]e require a plaintiff to plead facts, which if proved true, would establish the following four elements: (1) the existence of a duty of care on the part of the defendant, (2) a breach of that duty of care, (3) a causal connection between the defendant's breach of the duty of care and the plaintiff's injury, and (4) actual loss or damage resulting from the [breach]."[3]

¶7 Under Wisconsin law, "every person is subject to a duty to exercise ordinary care in all of his or her activities" and, therefore, "the elements of duty and breach are usually presented to the trier of fact in a question asking whether the defendant was negligent, and then the elements of causation and

---

[2] _Wagner v. Cont'l Cas. Co._, 143 Wis. 2d 379, 392-93, 421 N.W.2d 835 (1988).

[3] _Hoida, Inc. v. M & I Midstate Bank_, 2006 WI 69, ¶23, 291 Wis. 2d 283, 717 N.W.2d 17.

3

damages are addressed."[4]   Thus, generally, a trier of fact in a usual negligence case is presented with three questions: was the defendant negligent?, was that negligence the cause of the harm?, and what are the damages?[5]  As noted above, this case is somewhat different.

¶8   The threshold question is whether Luethi may be liable for the negligence of the independent contractor he hired to spray herbicides.  To answer that, we have to examine the nature of the activity itself because if spraying is an inherently dangerous activity, then it gives rise to a duty of ordinary care for Luethi for the acts of the independent contractor.  If, on the other hand, the activity is not inherently dangerous (and if no other exceptions apply), the duty of ordinary care is that

---

[4] Behrendt v. Gulf Underwriters Ins. Co., 2009 WI 71, ¶¶3, 14, 318 Wis. 2d 622, 768 N.W.2d 568.

[5] Id., ¶16.  There we stated:

In Nichols v. Progressive Northern Insurance Co., we reiterated that Gritzner and Rockweit were 'still good law in Wisconsin.'  There we held that in a negligence case, a defendant's conduct is not examined in terms of whether or not there is a duty to do a specific act, but rather whether the conduct satisfied the duty placed upon individuals to exercise that degree of care as would be exercised by a reasonable person under the circumstances.

See also Hoida, 291 Wis. 2d 283, ¶30 n.15 (applying Palsgraf minority approach and stating, "[T]he majority opinion clearly concludes that [defendants] have a duty to exercise ordinary care under the circumstances.  What the majority opinion turns on is whether the circumstances of this case require [defendants] to undertake all the affirmative acts that [plaintiff] requests.").

4

of the independent contractor, and Luethi cannot be liable for the acts of the other person.

¶9 In many cases, this determination of whether a given activity is inherently dangerous will be one of fact, but in the unusual case where the facts are undisputed and no reasonable jury could find otherwise,[6] it is appropriate to decide it as a question of law. As the relevant suggested verdict form in Wisconsin Jury Instruction——Civil 1022.6 notes, "There are times when the [question about inherent dangerousness] will not be necessary."

¶10 The record contains uncontroverted evidence that the chemical used here is capable of killing 56 "woody plant" species, including oak, birch, poplar and maple trees. It therefore poses a "naturally expected risk of harm" to trees on neighboring properties. The record also contains undisputed testimony and exhibits showing that it is possible to reduce that risk by taking precautions. Therefore, both parts of the inherently dangerous test are satisfied, and we agree with the court of appeals that under Wisconsin law, under these circumstances, "spraying the herbicides was an inherently dangerous activity, and, as a result, the general rule of

---

[6] See Morgan v. Pa. Gen. Ins. Co., 87 Wis. 2d 723, 735-36, 275 N.W.2d 660 (1979) (on the question of causation in a negligence case, stating that "whether negligence was a cause-in-fact of an injury is a factual question for the jury if reasonable men could differ on the issue, and the question only becomes one of law for judicial decision if reasonable men could not disagree").

nonliability for an independent contractor's torts did not apply."[7]

¶11 The threshold question in the negligence determination is resolved here in favor of a determination that Luethi may be liable for the acts of the independent contractor on the grounds that the spraying here was an inherently dangerous activity——it posed a risk of naturally expected harm, and it was possible to reduce the risk. With that question resolved, the negligence claim may now proceed, with the plaintiffs having the opportunity to show that Luethi failed to use ordinary care with regard to the activity and that such failure was the cause of the damage claimed,[8] followed by an appropriate damage question.

¶12 This is consistent with the approach applied in Wisconsin Jury Instruction——Civil 1022.6 and the Suggested Verdict Form 1 (Inherently dangerous activity). It is also

---

[7] Brandenburg v. Luethi, No. 2012AP2085, unpublished slip op., ¶24 (Wis. Ct. App. Apr. 23, 2013).

[8] The suggested verdict form that follows Wisconsin Jury Instruction——Civil 1022.6, Liability of one employing independent contractor, presents three questions.

The first is, "Was the work performed by the (owner) (principal contractor) inherently dangerous?"

The second is, "If you answered 1 "yes," then answer this question: Did (owner) fail to use ordinary care in (describe the work done)?"

And the third is, "If you answered question 2 "yes," then answer this question: Was that failure to use ordinary care a cause of (injury to (third person)) (damage to (third person)'s property)?" A note states, "There are times when the [first] question will not be necessary."

consistent with the Restatement sections on which we have relied in the prior cases addressing this question.

¶13 The Restatement sections describe a framework that imposes liability on an employer for the acts of the independent contractor where three facts are established: that there exists a naturally expected risk of harm, that there exists an opportunity to take precautions against the harm, and that the employer "knows or has reason to know" that it poses a risk and requires precautions. The concurrence/dissent rightly points out that Wisconsin case law clearly adopts the "inherently dangerous exception" as described in the Restatement sections discussed herein. However, it is equally clear that Wisconsin courts have rejected a strict liability approach in "inherently dangerous" cases. Adopting such an approach would erase the distinction between "inherently dangerous" and "extrahazardous activity," which we explicitly declined to do in Wagner. Wagner v. Cont'l Cas. Co., 143 Wis. 2d 379, 392-93, 421 N.W.2d 835 (1988).

¶14 At this point in the case, there has been no determination by a trier of fact of what Luethi knew or had reason to know about the danger inherent in the work. To impose strict liability would therefore contravene the applicable section of the Restatement and change the law by erasing one requirement——making an employer liable for activities even where it is not established that the employer knew or had reason to know of the danger inherent in the work. The lack of clarity on the analysis in prior cases is partly due to the fact that

7

this particular question has not been squarely addressed because the application of the "inherently dangerous" exception has been mentioned in other contexts rather than being subjected to full analysis.  Nevertheless, imposing strict liability without any resolution of the knowledge requirement, within the framework of the duty of ordinary care, is unsupported by the Restatement sections.  This "knows or has reason to know" factor seems to come into play on the question of whether Luethi failed to use ordinary care with regard to the activity.  No resolution of that question has been made at this point in the record; therefore, the court of appeals correctly stated that the case should be remanded for the relevant further determinations to be made, specifically whether Luethi exercised ordinary care to prevent damage to the Brandenburgs' property.

¶15 We therefore affirm the court of appeals and remand this matter to the circuit court for further proceedings consistent with this opinion.

## I.  BACKGROUND

¶16 Luethi hired an independent contractor who sprayed a potent herbicide——one capable of killing oak, birch, poplar and maple trees and 52 other woody species, according to its label—— on part of his property to rid it of a plant called prickly ash, which had grown thickly on the property, with some plants reaching a height of seven feet.  There was no written contract between Luethi and the contractor, and Luethi placed no time restrictions on the spraying company.

¶17 A few days after the herbicide was applied, Luethi's neighbors, the Brandenburgs, noticed that leaves were falling off of the birch trees and other plants on their property. Based on an investigation that identified the herbicide as the cause of the damage,[9] they sued Luethi as well as the independent contractor, Briarwood Forestry, and its employee and its insurer.[10] The only basis in the complaint for the claim was that the independent contractor was negligent for failing to take precautions to prevent the damage to their trees—specifically, to keep the chemicals from drifting onto adjoining property.

¶18 The circuit court for Trempealeau County, the Honorable John A. Damon presiding, looked to a six-factor test

---

[9] The complaint alleges the following:

[B]etween July 22, 2008, and October 20, 2008, [an] employee of the [Wisconsin Department of Agriculture, Transportation, and Consumer Protection] . . . led an investigation . . . . Through laboratory analysis of samples taken from the trees and other plants on the plaintiffs' . . . property[,] the investigation determined that the active ingredient found in Garlon 4 Specialty Herbicide and Agrisolutions 2,4-D LV4 was the direct cause of the total loss and extensive damage to said trees and other plants . . . .

[10] The record shows that a third-party complaint was subsequently filed by Briarwood Forestry stating that "[b]ecause of a mistake, the policy was issued by [the insurer], excluding, rather than specifically including, liability coverage for damages related to or resulting from the spray application of herbicides." The complaint stated that Briarwood Forestry "believed they had liability insurance coverage for liability that may result from or be related to the spray application of herbicides" and attributed the mistake to "an error in the communication between the agent and the insurance company."

9

discussed in a case from a Kansas district court that bore some factual resemblance to this case in that it also involved a claim concerning damage caused to plants by a neighbor's herbicide spraying. See Desaire v. Solomon Valley Co-op, Inc., No. 94-1271-PFK (D. Kan., Sept. 14, 1995). The circuit court, applying the factors cited in that case, held that spraying herbicides was not "abnormally dangerous" or "ultrahazardous." Therefore, it held that Luethi had no duty to the Brandenburgs and that only the independent contractor could be liable for any damage the spraying caused. The circuit court therefore granted Luethi's summary judgment motion.

¶19 In making its ruling, the circuit court stated, "I can't find that [under] the language used in Desaire this was abnormally dangerous and I can't find this reaches the level of ultrahazardous activity[.]"

¶20 On appeal, the court of appeals reversed that ruling on the grounds that the circuit court had relied on an improper standard. The relevant question was, the court of appeals said, whether the activity was inherently dangerous——not whether it was abnormally dangerous or ultrahazardous. Brandenburg v. Luethi, No. 2012AP2085, unpublished slip op., ¶¶1, 16 (Wis. Ct. App. Apr. 23, 2013).

¶21 Applying the test for inherently dangerous activities that we clarified in Wagner, 143 Wis. 2d at 392-93, the court of appeals concluded that "the risk of harm" posed by spraying herbicides "is one that could be naturally expected to arise in the absence of precautions." Brandenburg v. Luethi, No.

10

2012AP2085, unpublished slip op., ¶22 (Wis. Ct. App. Apr. 23, 2013). It also concluded, "Undisputed evidence also showed that the risk of harm could be reduced to a reasonable level by taking certain precautions." Id., ¶23. "Consequently, spraying the herbicides was an inherently dangerous activity . . . ." Id., ¶24. Its holding was essentially that no reasonable jury could find otherwise on the facts in the record and that the circuit court had erred when it used a test derived from Restatement (Second) of Torts, Section 520. (We note that Section 520 had also been the basis for the Desaire court's holding.) As the court of appeals noted, that Restatement section falls under "Strict Liability" and defines those circumstances where there can be liability "without the need of a finding of negligence." Restatement (Second) of Torts § 520 cmt. f (1977). It therefore reversed the judgment and remanded for further proceedings.

¶22 We granted review.

## II. STANDARD OF REVIEW

¶23 "Whether the circuit court has applied the correct legal standard is a question of law reviewed de novo." Landwehr v. Landwehr, 2006 WI 64, ¶8, 291 Wis. 2d 49, 715 N.W.2d 180. As noted above, the circuit court applied the standard employed in Desaire, which, in the course of answering a different question presented, contained discussion about what factors courts consider in determining "whether a given action is abnormally dangerous." Desaire v. Solomon Valley Co-op, Inc., No. 94-1271-PFK at *4 (D. Kan., Sept. 14, 1995).

11

¶24 The circuit court granted Luethi's summary judgment motion.  "There is a standard methodology which a trial court follows when faced with a motion for summary judgment."  Green Spring Farms v. Kersten, 136 Wis. 2d 304, 314-15, 401 N.W.2d 816 (1987).  "The first step of that methodology requires the court to examine the pleadings to determine whether a claim for relief has been stated."  Id.

> If a claim for relief has been stated, the inquiry then shifts to whether any factual issues exist. Under section 802.08(2), Stats., summary judgment must be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Id.  "When this court is called upon to review the grant of a summary judgment motion . . . we are governed by the standard articulated in section 802.08(2), and we are thus required to apply the standards set forth in the statute just as the trial court applied those standards."  Id. at 315.

### III. DISCUSSION

¶25 The claims in this case are simple negligence claims. The only twist is the fact that it involves an independent contractor.  The legal principles for negligence cases involving independent contractors are discussed in the treatise Prosser and Keeton on Torts.  In the section concerning negligence and independent contractors, the treatise writers describe how the courts moved from a general rule of liability for one hiring an independent contractor to the present general rule of non-liability. W. Page Keeton et al., Prosser and Keeton on Torts § 71, at 509 (5th ed. 1984).  The independent contractor

12

exception to that general rule appears in its current form in cases as early as 1851. Id. at 509, n.4. The treatise authors state that courts "continue[] to repeat the general rule of nonliability with exceptions" and state that the exceptions "overlap and shade into one another." Id. at 510.

¶26 The treatise explains the origins of the inherently dangerous activities exception, in an 1876 case,[11] which held the employer could be found liable for the negligence of the contractor, and it notes that "'[i]nherent danger' converges not only with 'special precautions' but also with 'non-delegable duty.'" Id. at 512 n.44.

¶27 By 1895, we had recognized as "well-established" both the independent contractor rule and the "inherently dangerous" exception. In a case involving extensive flood damage to property allegedly caused by someone opening a dam in order to drive logs down a river, we stated that we had "repeatedly held"

> that the well-established general rule is to the effect that, where one person employs another to furnish the materials and do a specific job of work as an independent contractor, he does not thereby render himself liable for injuries caused by the sole negligence of such contractor or his servants; and that the well-recognized exception to such general rule, to the effect that where the performance of such contract, in the ordinary mode of doing the work, necessarily or naturally results in producing the defect or nuisance which caused the injury, then the

---

[11] The case, Bower v. Peate, 1 Q.B. 321 (1876), "gave rise to an exceptional category of work likely to be peculiarly dangerous 'unless special precautions are taken.'" W. Page Keeton et al., Prosser and Keeton on Torts § 71, at 512 (5th ed. 1984).

13

> employer is subject to the same liability to the injured party as the contractor.

Carlson v. Stocking, 91 Wis. 432, 436, 65 N.W. 58 (1895) (emphasis added) (quotations omitted) (citing earlier cases). The rule was stated in that case in the context of a dispute about whether the person whose acts had allegedly caused the damage was an independent contractor. Id. at 432. As detailed below, later cases continued the practice of repeatedly citing the rule of non-liability with an exception for activities that could be characterized as inherently dangerous.[12]

¶28 Nevertheless, Luethi argues that the law does not impose liability on him for the acts of the independent contractor in this instance, and if it does, it should not. He advances two types of arguments. First, he makes a series of arguments about why the inherently dangerous exception is not or should not be recognized in Wisconsin law, especially where homeowners are concerned. Second, he argues that even if the exception is recognized by Wisconsin law, it does not apply in

---

[12] We agree with the general statement of the inherently dangerous exception as set forth by the Chief Justice's concurrence/dissent. Concurrence/Dissent, ¶5. However, we are not convinced that our precedent has fully explained the steps applicable to the analysis of the inherently dangerous exception. For example, in setting forth the inherently dangerous exception the concurrence/dissent quotes Brooks v. Hayes, 133 Wis. 2d 228, 395 N.W.2d 167 (1986). However, Brooks did not apply the inherently dangerous exception at all; therefore, it did not illuminate any analysis in terms of the inherently dangerous exception's application. Instead, Brooks concerned the negligence of an independent contractor under "a breach of contract theory." Id. at 241. In contrast to Brooks, our opinion today sets forth the proper analysis in applying the inherently dangerous exception to the general rule.

14

this case because herbicide spraying is not an inherently dangerous activity. The Brandenburgs contend that the "inherently dangerous" exception is clearly expressed in the law, is straightforward to apply, and is consistent with good policy. They argue that it applies on the facts of this case.[13] We address the arguments in turn.

¶29 Luethi argues first that the inherently dangerous exception does not control because it "has been a confusing and evolving doctrine in Wisconsin, which has been described but not applied." He contends that "no precedent has applied the rule the Brandenburgs now seek to resurrect in more than 25 years," that "no applicable precedent subsequent to Lofy[14] . . . has actually applied the rule in either direction," and that in the cases cited, the rule, though stated, has never operated to allow recovery for a plaintiff.

¶30 Even though there may not be a Wisconsin case on all fours with the specific facts in this case, we see no reason

---

[13] The Brandenburgs argue, in the alternative, that even if a higher standard is required before holding that an employer may be liable for the acts of an independent contractor, it is met here because spraying qualifies as an extrahazardous activity under the test set forth in Wagner, 143 Wis. 2d at 392-93 (defining an extrahazardous activity as "one in which the risk of harm remains unreasonably high no matter how carefully it is undertaken"). Because we resolve this case on the basis of the "inherently dangerous" exception to the independent contractor rule, we do not address their alternative argument.

[14] Lofy, 42 Wis. 2d 253.

that the accepted rule needs to be revisited.[15] The law is well-founded in the Restatement, very familiar to treatise writers, and often repeated in Wisconsin cases dating to the early nineteenth century. See Carlson, 91 Wis. 432 (citing earlier cases). In Finkelstein v. Majestic Realty Corp., 198 Wis. 527, 224 N.W. 743 (1929), which involved contractors apparently knocking loose a piece of terra cotta that fell from a balcony and killed a child below, the court observed,

> It is conceded that the contractors were independent contractors, and that ordinarily the owner cannot be held liable for the negligent acts of such contractors. On the other hand, it is also clear that there are exceptions to the general rule, which consist of cases like the one herein involved, where the work itself is inherently dangerous to the public . . . .

Id. at 536-37.

¶31 We mentioned the exception again, in 1931, in Medley v. Trenton Investment Company, 205 Wis. 30, 236 N.W. 713 (1931), a case in which a landlord was sued for the wrongful death of a tenant after a contractor fumigated a neighboring apartment and the victim died from exposure to the fumes:

> [I]t does not follow, because the relationship . . . was that of independent contractor and employer, that the defendant may not be liable. . . . As between owners and principal contractors and third persons, it seems clear, under our decisions, that the owner or principal contractor is not liable for the negligent

---

[15] See State v. Kucik, No. 2009AP933-CR, unpublished slip op., ¶46 (Wis. Ct. App. Nov. 16, 2010) (Fine, J., concurring) ("Simply put, there is no specific on-all-fours case because the issue has apparently not come up before now. That, of course, is no reason to not decide the issue.").

acts of an independent contractor unless the act to be done or the work to be performed is inherently dangerous or naturally or necessarily creates the nuisance or the defect . . . .

Id. at 35-36.

¶32 The principle was invoked in Lofy by plaintiffs who sought to hold a school district liable for the alleged negligence of a bus driver who was an independent contractor. Lofy v. Joint Sch. Dist. No. 2, 42 Wis. 2d 253, 263, 166 N.W.2d 809 (1969). There we noted the rule and the "inherently dangerous" exception and then rejected the argument that it applied in that case:

> The general rule is that one who contracts for the services of an independent contractor is not liable to others for the acts of the independent contractor. There are exceptions to the rule, such as where services contracted for involve inherent danger . . . . The operation of a bus between Cumberland and Madison over modern highways cannot be considered inherently dangerous.

Id. at 263.

¶33 We have also looked to the Restatement (Second) of Torts in prior cases and have examined the principles set forth in sections 413, 416 and 427 in resolving questions arising in negligence claims involving independent contractors.[16]

> Sections 416 and 427 impute the independent contractor's negligence to the principal employer irrespective of whether the employer is himself or herself at fault on the basis that the dangerous

---

[16] Restatement (Third) of Torts, Section 59, states that it replaces sections 416 and 427. Neither party cited to that section or in any way relied on it, and we will thus not discuss it further.

activities involved give rise to a nondelegable duty. "They arise in situations in which, for reasons of policy, the employer is not permitted to shift the responsibility for the proper conduct of the work to the contractor."

Wagner, 143 Wis. 2d at 391 (quoting Restatement (Second) of Torts, Introductory Note to secs. 416-429). We cited to both Prosser and Keeton's treatise and the Restatement for these principles in Snider v. Northern States Power Co., 81 Wis. 2d 224, 233, 260 N.W.2d 260 (1977):

> This principle of imposing liability on an otherwise immune contracting owner is limited to enterprises in which there is a high degree of risk in relation to the environment or a specific unreasonable risk to third parties. The emphasis is upon the peculiar nature of the risk and on the need for special and unusual care. Prosser, supra, at 472-73. Restatement 2d, Torts, in discussing this nondelegable duty, refers to "peculiar unreasonable risk" (sec. 413, p. 384), "peculiar risk" (sec. 416, p. 395), and "special danger to others . . . inherent in or normal to the work" (sec. 427, p. 415).

¶34 As Snider recognized, these sections overlap in certain respects.[17]

---

[17] It appears that Section 413 could have potential application to the facts of this case; however, the Brandenburgs did not allege in the complaint that any harm was caused by Luethi. Rather, the sole basis identified in the complaint for the claim was the negligence of Briarwood Forestry Services, LLC, and its employee for failing to ensure that the herbicide was safely applied. Section 413 is entitled "Duty to Provide for Taking of Precautions Against Dangers Involved in Work Entrusted to Contractor," and it falls under Chapter 15, Liability of an Employer of an Independent Contractor, under the heading, "Topic 1, Harm Caused by Fault of Employers of Independent Contractors." It states:

> One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable

18

¶35  Section 416 is entitled "Work Dangerous in Absence of Special Precautions" and it falls in Chapter 15, Liability of an Employer of an Independent Contractor, under the heading, "Topic 2: Harm Caused by Negligence of a Carefully Selected Independent Contractor."  It states:

> One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

Restatement (Second) of Torts § 416 (1965).

¶36  A comment to Section 416 states in part:

> There is a close relation between the rule stated in this Section, and that stated in § 427, as to dangers inherent in or normal to the work. . . . The rules stated in the two Sections have been applied more or less interchangeably in the same types of cases, and frequently have been stated in the same opinion as the same rule, or as different phases of the same rule. The rule stated in this Section is more commonly stated and applied where the employer should anticipate the need for some specific precaution, such as a railing around an excavation in the sidewalk.

---

> risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer (a) fails to provide in the contract that the contractor shall take such precautions, or (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

Restatement (Second) of Torts § 413 (1965).

> The rule stated in § 427 is more commonly applied where the danger involved in the work calls for a number of precautions . . . .

Id., §416, cmt. a.

¶37 Section 427 is entitled "Negligence as to Danger Inherent in the Work" and it falls under the same chapter and topic heading. It states:

> One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

Id., § 427. A comment to this section clarifies that, like the rule stated in Section 416, "the rule here stated applies only where the harm results from the negligence of the contractor in failing to take precautions against the danger involved in the work itself, which the employer should contemplate at the time of his contract." Id. § 427 cmt. d. Further, "the rule stated here has no application . . . as to negligence in the operative details of the work which involve no peculiar risk, which the employer may reasonably assume will be carried out with proper care." Id.

¶38 The court of appeals concisely summarized the applicable principles derived from our case law, which has consistently referenced the Restatement sections above:

> Following Lofy and Wagner, the following principles are clear: (1) a principal employer is generally not liable for an independent contractor's negligence; (2) a principal employer may be liable to a third

20

party for the independent contractor's negligence, if the independent contractor was performing inherently dangerous work; and (3) a principal employer may be liable to the independent contractor's employee, if the independent contractor was performing extrahazardous work.   The Brandenburgs are not employees of Briarwood.   Thus, to hold Luethi liable for Briarwood's negligence, the Brandenburgs must show that Briarwood's work was inherently dangerous. Contrary to Luethi's assertions, they need not show that the work was extrahazardous. . . .

If the [circuit] court felt the need to reference the Restatement, it should have looked to § 427, which is directly on point. . . .

Under Wagner and the applicable jury instruction, two elements are necessary for an activity to be considered inherently dangerous: (1) the activity must pose a naturally expected risk of harm; and (2) it must be possible to reduce the risk to a reasonable level by taking precautions.   Based on the undisputed facts, we conclude as a matter of law that Briarwood's application of herbicides met this standard.

Brandenburg v. Luethi, No. 2012AP2085, unpublished slip op., ¶¶16, 20, 21, (Wis. Ct. App. Apr. 23, 2013) (citations omitted). We agree.

¶39 While it is true that in some earlier cases the distinction between the categories of "extrahazardous" and "inherently dangerous" activities appears unclear, we dispelled any confusion on that point in Wagner, when we specifically explained the difference between the two: "We do not regard an activity which is inherently dangerous because of the absence of special precautions to be synonymous with an activity that is extrahazardous.   A person engaged in an activity of the first type, i.e., one that is inherently dangerous without special

21

precautions, can take steps to minimize the risk of injury." Wagner, 143 Wis. 2d at 392.

¶40 In short, we have consistently acknowledged the rule and the exception that applies here. The lack of cases in which the exception has applied in precisely the way it applies here does not persuade us that the rule does not exist.[18]

¶41 Luethi also argues that, if the "inherently dangerous" exception is good law, homeowners and landowners should be exempt from its application because no Wisconsin cases dealing with this exception have applied it to an individual homeowner. For the reason already given——that absence of factually identical cases does not persuade us of the invalidity of the rule——we disagree. Nor has Luethi pointed us to precedent as a legal basis supporting a contrary rule if an individual homeowner is involved.

¶42 In a similar vein, he argues that if liability exists as to a homeowner, public policy factors[19] should preclude

---

[18] We are not unaware that the exception has its occasional detractor. A dissenting opinion in a 1992 Colorado case concluded that the exception was impractical and unnecessary and stated that "clearer more predictable theories of liability are available to address the policy considerations that purportedly support the inherently dangerous doctrine." Huddleston by Huddleston v. Union Rural Elec. Ass'n, 841 P.2d 282, 295 (Colo. 1992) (Rovira, J., dissenting).

[19] We have summarized those factors as follows:

In Colla v. Mandella, 1 Wis. 2d 594, 598-99, 85 N.W.2d 345 (1957) this court first articulated the following six public policy factors that could be used by courts to limit liability in negligence claims: 1) [T]he injury is too remote from the negligence; 2) Recovery

22

liability under these circumstances. Specifically, he argues that the injury is too remote from the negligence, that the injury is wildly out of proportion to the tortfeasor's culpability, that allowing recovery would place an unreasonable burden on the tortfeasor, and that allowing recovery would enter a field that has no sensible or just stopping point. In support of his public policy arguments, he relies on our holdings in Casper v. American International South Insurance Co., 2011 WI 81, 336 Wis. 2d 267, 800 N.W.2d 880, and Hoida, Inc. v. M & I Midstate Bank, 2006 WI 69, 291 Wis. 2d 283, 717 N.W.2d 17.

¶43 In the first case, Casper, we found the that the injury was too remote from the negligence to permit a finding of liability for Chief Executive Officer (CEO) Jeffrey Wenham, who had approved a route that was driven by Mark Wearing, a truck driver who, while under the influence of multiple drugs, caused a tragic accident:

> [The CEO] did not hire Wearing. He did not train Wearing. He did not supervise Wearing. In fact, he never met the man driving the truck that collided with

---

> is too wholly out of proportion to the culpability of the negligent tort-feasor; 3) [I]n retrospect it appears too highly extraordinary that the negligence should have brought about the harm; 4) Allowing recovery would place too unreasonable a burden upon [the tortfeasor]; 5) Allowing recovery would be too likely to open the way to fraudulent claims; or 6) Allowing recovery would enter a field that has no sensible or just stopping point.

Fandrey ex rel. Connell v. Am. Family Mut. Ins. Co., 2004 WI 62, ¶1 n.1, 272 Wis. 2d 46, 680 N.W.2d 345 (internal quotations omitted).

23

the Caspers' vehicle that day in May. Any negligence on [the CEO's] part was remote from the Caspers' injury in terms of time, distance, and cause.

*Casper*, 336 Wis. 2d 267, ¶96.

¶44 In *Hoida*, the plaintiff sought recovery from a disbursing agent of money that was disbursed to a subcontractor who took $650,000 in construction loan proceeds without doing the work. *Hoida*, 291 Wis. 2d 283, ¶43. We declined on public policy grounds to assign liability to a disbursing agent for a construction loan, where that agent "acted solely at the direction" of the bank. We did so on the grounds that permitting recovery would place too unreasonable a burden on such agents to verify details of the progress of construction projects. *Id.*

¶45 Luethi analogizes his position to that of the CEO in *Casper*, for whom the ultimate harm was not reasonably foreseeable, and to the disbursing agent in *Hoida*, who would have been unreasonably burdened by the responsibility of checking on the progress of the work. The plaintiffs disagree that such analogies are valid.

¶46 We do not see the situation of a person hiring an independent contractor doing inherently dangerous work as raising the types of concerns that precluded liability in the cases Luethi cites. He cannot be compared to the CEO who did not hire or even meet the truck driver who caused the harm and whose only connection to the accident was the fact that he had approved the route the driver was on. Nor is a person who hires an independent contractor to do inherently dangerous work on his own property fairly compared to a disbursing agent for a

24

construction loan.   This is true for many reasons, including that the property where the work was done was Luethi's own. Also, the construction project was of a magnitude much larger than a one-time application of herbicide.

¶47 Further, the public policy factors have in fact already been balanced in favor of potential liability in these cases.   Public policy reasons underlie the "inherently dangerous activity" exception in the first place, as the Restatement sections discussed note.   As one court observed, the "inherently dangerous" exception "accords with basic intuitions of fairness, and it is also consistent with what is often efficient economically."   Huddleston by Huddleston v. Union Rural Elec. Ass'n, 841 P.2d 282, 287 (Colo. 1992).   The reason for its existence is that the employer is in a better position than third parties to take precautions against harm to unwitting third parties, and should not be permitted to shift liability to a contractor where inherently dangerous activities are involved.[20]   We do not agree that the injury is so remote from the negligence that public policy precludes liability – indeed it follows directly from it.   Also, we do not agree that holding Luethi liable imposes an unreasonable burden under these circumstances.

---

[20] Restatement (Second) Torts, Introductory Note to §§ 416-429.   ("[F]or reasons of policy, the employer is not permitted to shift the responsibility for the proper conduct of the work to the contractor.")

25

¶48 Alternatively, Luethi asks that we adopt a rule that liability may exist for a homeowner only where an activity is "extrahazardous," using the test employed by the Kansas district court in Desaire, which applied the six factors from Restatement (Second) of Torts § 520. Section 520, which falls in the division concerning strict liability, defines "abnormally dangerous" activities using the following standard:

> In determining whether an activity is abnormally dangerous, the following factors are to be considered:
>
> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
>
> (b) likelihood that the harm that results from it will be great;
>
> (c) inability to eliminate the risk by the exercise of reasonable care;
>
> (d) extent to which the activity is not a matter of common usage;
>
> (e) inappropriateness of the activity to the place where it is carried on; and
>
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

Restatement (Second) of Torts § 520 (1977).

¶49 The Desaire decision relied on Section 520. From the cases to which the Desaire court cites, it can be inferred that the claim involved in the case may have been a claim for strict liability rather than a negligence claim though that is not

26

clearly stated.[21]   What is clear is that application of the factors from Section 520 is appropriate where a claim for strict liability is made.   To apply such a standard to negligence claims such as this one would be a departure from Wisconsin law, as the court of appeals correctly noted.[22]   To import strict liability from a products liability context to a negligence claim would mean "reliev[ing] [a plaintiff] of proving specific acts of negligence and protect[ing] him from [applicable] defenses . . . ."   Dippel v. Sciano, 37 Wis. 2d 443, 460, 155 N.W.2d 55 (1967).

---

[21] This is partly because the Desaire court was not actually deciding the "abnormally dangerous" activity issue; it was merely commenting on the issue in the context of deciding a completely unrelated matter, that "the state district court did not issue a final and hence binding order on the Co-op's independent contractor status." Desaire v. Solomon Valley Co-op, Inc., No. 94-1271-PFK, at *3 (D. Kan., Sept. 14, 1995).

[22] The court of appeals stated,

> Moreover, even absent any conflict with Wisconsin law, we are not convinced that Desaire's reliance on § 520 was correct. Section 520 is found in Chapter 21 of the Restatement, which deals with situations in which a person may be subject to strict liability for harm caused by abnormally dangerous activities. See, e.g., Restatement (Second) of Torts §§ 519, 520B, 520C (1977). Chapter 21 does not address employer liability for harm caused by an independent contractor. That topic is instead discussed in Chapter 15, which contains a section that specifically addresses an employer's liability for inherently dangerous activities. See id., § 427 ("Negligence as to Danger Inherent in the Work").

Brandenburg v. Luethi, No. 2012AP2085, unpublished slip op., ¶20, (Wis. Ct. App. Apr. 23, 2013).

¶50 Having established what the law in Wisconsin is, we turn to Luethi's final argument, which is that even if the "inherently dangerous" exception is the law and the <u>Wagner</u> and <u>Lofy</u> standards govern, herbicide spraying does not qualify as inherently dangerous. The plaintiffs, of course, disagree.

¶51 To support his argument that herbicide spraying is not inherently dangerous, Luethi points to Comment f to Restatement (Second) of Torts, Section 413. That section states:

> One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer
>
> (a) fails to provide in the contract that the contractor shall take such precautions, or
>
> (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

Restatement (Second) of Torts § 413 (1965).

¶52 The comment to which Luethi refers provides that "the extent of the employer's knowledge and experience in the field of work to be done is to be taken into account," and Luethi asserts that in light of this comment, he cannot be held liable because he "had no knowledge of the peculiar risks involved, nor special precautions needed to mitigate them, nor any reason to foresee [the contractor] would ignore standard safety precautions such as instructions on the chemicals' labels." Luethi's knowledge or lack thereof are matters to be considered as to whether he exercised ordinary care.

28

¶53 Section 413, the section with the comment to which Luethi cites, falls into the first part of Chapter 15 of the Restatement (Second), "Liability of an Employer of an Independent Contractor." The chapter is divided into two parts: the first, Topic 1, covers "Harm Caused by the Fault of Employers of Independent Contractors," and the second, Topic 2, covers "Harm Caused by the Negligence of a Carefully Selected Independent Contractor." Topic 2, which includes sections 416 and 427, which we discussed above, overlaps with Section 413, as was acknowledged in Snider, in that all three contain language conditioning liability on, among other things, what the employer "should recognize" or "has reason to know" about the nature of the danger involved in the work.

¶54 Under sections 416 and 427, an employer's assertions of a lack of knowledge about an activity's dangerousness are not dispositive on the question of its inherent dangerousness because liability may be imposed for activity "which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken" (as Section 416 states), and for activity involving "a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract" (as Section 427 states).

¶55 The Restatement sections at issue thus explicitly condition liability not on actual knowledge but on the inherent dangers an employer of an independent contractor "should

29

recognize," "has reason to know," or "has reason to contemplate." This "knows or has reason to know" factor seems to come into play on the question of whether Luethi failed to use ordinary care with regard to the activity.

¶56 In many cases, the determination of an activity's inherent dangerousness will be a question of fact.[23] However, in certain circumstances involving undisputed facts, a court may hold an activity is inherently dangerous as a matter of law. As noted above, Wisconsin Jury Instruction–Civil 1022.6 includes a note referring to the threshold "inherently dangerous" question that says, "There are times when the [first] question will not be necessary."

¶57 For example, in Lofy, this court held as a matter of law that "[t]he operation of a bus between Cumberland and Madison over modern highways cannot be considered inherently dangerous." Lofy, 42 Wis. 2d at 263. See also Brooks v. Hayes, 133 Wis. 2d 228, 395 N.W.2d 167 (1986). Here the court of appeals, citing the extensive and uncontroverted evidence, determined that certain precautions could reduce the risk to a reasonable level:

> At the fact-finding hearing, Brian Borreson, Briarwood's owner, testified that when spraying herbicides, there is a risk that drift will occur and cause damage to neighboring properties. Lee Shambeau,

---

[23] See, e.g., Mueller v. Luther, 31 Wis. 2d 220, 230-231, 142 N.W.2d 848 (1966) and Wis. JI——Civil, 1022.6, Liability of One Employing Independent Contractor (including as a suggested verdict form a jury question on whether the work performed was inherently dangerous).

Luethi's expert witness, also described various ways that sprayed herbicides can cross property lines, and he admitted that herbicide drift can cause harm. In addition, the Brandenburgs' expert, Gary LeMasters, testified that spraying herbicides involves a risk of drift onto neighboring properties. Luethi did not present any evidence to the contrary. Thus, the undisputed evidence established that Briarwood's spraying of the herbicides posed a risk of harm. Moreover, common sense dictates that herbicides sprayed outdoors on one property will not necessarily be contained to that property. Consequently, the risk of harm is one that could be naturally expected to arise in the absence of precautions.

Undisputed evidence also showed that the risk of harm could be reduced to a reasonable level by taking certain precautions. Both Borreson and Shambeau testified that various practices can be used to reduce the possibility of drift, including: (1) avoiding spraying during high velocity winds; (2) spraying when the wind is blowing away from a neighbor's property; (3) spraying in cooler weather; (4) using low pressure spray nozzles; (5) using a thickening agent; and (6) keeping spray nozzles close to the ground. While these practices do not completely eliminate the possibility of drift, Borreson testified they "should be fairly effective in controlling the situation[.]" Similarly, Shambeau testified that the risk of drift can never be eliminated "100 percent," but it can be reduced by taking precautions. LeMasters agreed that the risk cannot be completely eliminated, but he stated the herbicides in question can be "applied safely without drift[.]" The circuit court aptly summarized the witnesses' testimony, stating that, although the risk of harm can never be eliminated entirely, it can be reduced "to a large degree by using reasonable care."

The undisputed evidence therefore established that Briarwood's application of the herbicides posed a naturally expected risk of harm, and that certain precautions could be taken to reduce the risk to a reasonable level.

Brandenburg v. Luethi, No. 2012AP2085, unpublished slip op., ¶¶22-24 (Wis. Ct. App. Apr. 23, 2013).

31

¶58 We agree with the court of appeals for the reasons it stated that in this case, under our precedent, the activity is inherently dangerous, because the activity poses a naturally expected risk of harm, and taking certain precautions could reduce the risk to a reasonable level.

¶59 That determination resolves the threshold question in this claim as to Luethi. Because the activity involved was inherently dangerous, Luethi may be liable despite hiring an independent contractor. The next questions to answer are 1) whether Luethi failed to use ordinary care with regard to any danger inherent in the herbicide spraying that he knew or had reason to know about, and 2) if so, whether any harm that occurred was caused by the spraying. As the court of appeals noted, "[T]he factual question remains for the jury to determine whether Luethi exercised ordinary care to prevent damage to the Brandenburgs' property." Id., ¶24.

## IV. CONCLUSION

¶60 The record contains uncontroverted evidence that the chemical used here is capable of killing 56 "woody plant" species, including oak, birch, poplar and maple trees. It therefore poses a "naturally expected risk of harm" to trees on neighboring properties. The record also contains undisputed testimony and exhibits showing that it is possible to reduce that risk by taking precautions. Therefore, both parts of the inherently dangerous test are satisfied, and we agree with the court of appeals that under Wisconsin law, under these circumstances, "spraying the herbicides was an inherently

32

dangerous activity, and, as a result, the general rule of nonliability for an independent contractor's torts did not apply."[24]

¶61 The threshold question in the negligence determination is resolved here in favor of a determination that Luethi may be liable on the grounds that the spraying here was an inherently dangerous activity. With that question resolved, the negligence claim may now proceed, with the plaintiffs having the opportunity to show that Luethi failed to use ordinary care with regard to the activity and that such failure was a cause of the damage claimed, followed by an appropriate damages question. This is consistent with the approach applied in Wisconsin Jury Instruction——Civil 1022.6 and the Suggested Verdict Form 1 (Inherently dangerous activity). It is also consistent with the Restatement sections on which we have relied in the prior cases addressing this question.

¶62 The Restatement sections describe a framework that imposes liability on an employer for the acts of the independent contractor where three facts are established: that there exists a naturally expected risk of harm, that there exists an opportunity to take precautions against the harm, and that the employer "knows or has reason to know" that it poses a risk and requires precautions. The concurrence rightly points out that Wisconsin case law clearly adopts the "inherently dangerous

---

[24] _Brandenburg v. Luethi_, No. 2012AP2085, unpublished slip op., ¶24 (Wis. Ct. App., Apr. 23, 2013).

exception" as described in the Restatement sections discussed herein. However, it is equally clear that Wisconsin courts have rejected a strict liability approach in "inherently dangerous" cases. Adopting such an approach would erase the distinction between "inherently dangerous" and "extrahazardous activity," which we explicitly declined to do in Wagner.

¶63 At this point in the case, there has been no determination by a trier of fact of what Luethi knew or had reason to know about the danger inherent in the work. To impose strict liability would therefore contravene the applicable section of the Restatement and change the law by erasing one requirement——making an employer liable for activities even where it is not established that the employer knew or had reason to know of the danger inherent in the work. The lack of clarity on the analysis in prior cases is partly due to the fact that this particular question has not been squarely addressed because the application of the "inherently dangerous" exception has been mentioned in other contexts rather than being subjected to full analysis. Nevertheless, imposing strict liability without any resolution of the knowledge requirement, within the framework of the duty of ordinary care, is unsupported by the Restatement sections. This "knows or has reason to know" factor seems to come into play on the question of whether Luethi failed to use ordinary care with regard to the activity. No resolution of that question has been made at this point in the record; therefore, the court of appeals correctly stated that the case should be remanded for the relevant further determinations to be

34

made, specifically "whether Luethi exercised ordinary care to prevent damage to the Brandenburgs' property."

¶64 We therefore affirm the court of appeals and remand this matter to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—Affirmed and cause remanded to the circuit court for further proceedings consistent with this opinion.

¶65 SHIRLEY S. ABRAHAMSON, C.J. *(concurring in part, dissenting in part).* When a landowner employs an independent contractor to perform an activity that this court declares is inherently dangerous as a matter of law, who should bear the cost of the damage to the innocent neighbor's property? Should it be the employer who hires the independent contractor to perform the inherently dangerous activity and reaps the benefits of that activity? Or should it be the innocent neighbor who suffers the damages caused by the independent contractor's negligence?[1]

¶66 Our case law has already answered this question: "[A]n employer of an independent contractor is vicariously liable for the torts of an independent contractor if the activity of the independent contractor is inherently dangerous."[2]

---

[1] In these situations liability has been imposed on the employer based on two policy concerns: Fairness and economic efficiency. Huddleston v. Union Rural Elec. Ass'n, 841 P.2d 282, 287 (Colo. 1992). See Alan O. Sykes, The Economics of Vicarious Liability, 93 Yale L. J. 1231, 1271-73 (1984).

[2] Brooks v. Hayes, 133 Wis. 2d 228, 233-34, 242-43, 395 N.W.2d 167 (1986). Although Brooks was not decided on the grounds that the inherently dangerous exception applied, it did properly state the test for the vicarious liability of an employer for the torts of its independent contractor while performing an inherently dangerous activity. Simply because Brooks was decided on other grounds does not render its statement of law inaccurate. Wisconsin does not consider statements germane to a controversy as dicta. See Zarder v. Humana Ins. Co., 2010 WI 35, ¶52 n.19, 324 Wis. 2d 325, 782 N.W.2d 682.

See also Wagner v. Cont'l Cas. Co., 143 Wis. 2d 379, 391, 421 N.W.2d 835 (1988) (cited by majority op., ¶39); Finkelstein v. Majestic Realty Corp., 198 Wis. 527, 537, 224 N.W. 743 (1929) (cited by majority op., ¶30); Medley v. Trenton Inv. Co., 205 Wis. 30, 36, 236 N.W. 713 (1931) (cited by majority op., ¶31).

¶67 The majority opinion professes that it "sets forth the proper analysis in applying the inherently dangerous exception to the general rule,"[3] but its analysis does not comport with the principles underlying the inherently dangerous exception.[4]

¶68 The general rule, upon which we all agree, is that employers of independent contractors are not generally liable for the torts committed by their independent contractors. An

---

Vicarious liability applies when the law imposes a duty on an employer, regardless of the employer's own actions, for the tortious actions of another:

> Vicarious liability is a form of strict liability without fault. A master may be held liable for a servant's torts regardless of whether the master's own conduct is tortious. . . . [V]icarious liability is a separate and distinct theory of liability, and should not be confused with any direct liability that may flow from the master's own fault in bringing about the plaintiff's harm. Vicarious liability is imputed liability.

Kerl v. Dennis Rasmussen, Inc., 2004 WI 86, ¶21, 273 Wis. 2d 106, 682 N.W.2d 328.

The majority opinion's use of the term "strict liability" is misleading. Majority op., ¶¶13, 14, 62, 63. Once the activity has been deemed "inherently dangerous," the plaintiff must still show that the independent contractor was causally negligent. If there was negligence on the part of the independent contractor in performing that inherently dangerous activity, then the employer is also liable, regardless of his or her own personal negligence.

[3] Majority op., ¶27 n.12.

[4] This opinion addresses the "inherently dangerous" exception and does not address the "extrahazardous activity" exception, which has different rules for liability. See Wagner, 143 Wis. 2d at 387-88, 391-98.

employer may, however, be liable for the torts of an independent contractor in two circumstances:

> (1) "the employer may be liable for any negligence of his own in connection with the work to be done," and

> (2) under certain circumstances such as the independent contractor's performance of inherently dangerous activities, the employer may be "liable for the negligence of the contractor, although [the employer] has . . . done everything that could reasonably be required of him [or her]."[5]

¶69 These two bases of liability of the employer of an independent contractor are analyzed separately in the case law and the literature.

¶70 This case addresses only a claim against the employer (Luethi) for the tortious acts committed by his independent contractor. The complaint does not allege that any wrongful acts were committed by Luethi.[6] As the majority opinion notes, summary judgment determinations rely solely on allegations in the complaint.[7]

¶71 By confusing the two separate inquiries of an employer's liability, the majority reaches the conclusion that vicarious liability attaches to the employer as a matter of law

---

[5] W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 71, at 510, 511 (5th ed. 1984).

[6] Majority op., ¶17 ("The only basis in the complaint for the claim was that the independent contractor was negligent . . . .").

[7] Majority op., ¶24.

for his or her independent contractor's torts in performing an inherently dangerous activity, but that such an employer can nonetheless avoid liability if he or she exercised ordinary care.

¶72 Because the court has already determined as a matter of law that the herbicide spraying by the independent contractor in the instant case constituted an inherently dangerous activity and nothing in the complaint or record avers Luethi's negligence, no inquiry into Luethi's level of care is necessary.

¶73 Accordingly, I agree with the majority opinion that the matter is to be remanded to the circuit court to determine whether the independent contractor was causally negligent in damaging the neighbor's property. I disagree that on remand the circuit court must resolve the question of whether Luethi failed to use ordinary care with regard to the activity. Neither the complaint nor the summary judgment record raises the issue of the negligence of Luethi himself.

¶74 I reach my conclusions by reasoning as follows:

I. The principles of tort law in the Restatements and the literature lead to the conclusion that an employer of an independent contractor is vicariously liable for the causal negligence of the independent contractor who performs an inherently dangerous activity. See ¶¶75-89, infra.

II. Wisconsin case law has adopted these principles and has applied them. See ¶¶90-97, infra.

4

III. By declaring as a matter of law that the activity of the independent contractor was inherently dangerous, the majority opinion has by definition already concluded as a matter of law that a reasonable person in the position of Luethi knew or had reason to know of the inherent danger in the activity. See ¶¶98-104, infra.

IV. The Wisconsin jury instruction on "inherent dangerousness," on which the majority opinion rests its reasoning, requires clarification in light of our existing case law. See ¶¶105-118, infra.

I

¶75 In order to clarify the nature of the liability in the instant case, I lay out the state of the law regarding instances in which an employer of an independent contractor is liable for the independent contractor's negligence.

¶76 The general rule, as I stated above, is that one who contracts for the services of an independent contractor is not liable to others for the acts of the independent contractor.[8]

¶77 An employer may, however, be liable for the torts of an independent contractor under a variety of exceptional circumstances. The Restatement (Second) of Torts organizes the bases for an employer's liability when he or she employs an independent contractor into two distinct categories:

(1) "harm caused by fault of employers of independent contractors"[9] and

---

[8] Lofy v. Joint School Dist. No. 2, 42 Wis. 2d 253, 263, 166 N.W.2d 809 (1969).

5

(2) "harm caused by negligence of a carefully selected independent contractor."[10]

¶78 These two categories are described in the Third Restatement as (1) "direct liability in negligence"[11] and (2) "vicarious liability."[12]

¶79 In the first category, direct liability, an employer of an independent contractor may be held liable for the injuries caused by the employer's own negligence.[13] That is, liability for the employer exists on "occasions where the employer may be liable for his [or her] own negligence, even if the work entrusted to the contractor is such that the employer is not

---

[9] Restatement (Second) of Torts ch. 15, topic 1, intro. note, at 371 (1965).

[10] Restatement (Second) of Torts, ch. 15, topic 2, intro. note, at 371 (1965). "The liability imposed is closely analogous to that of a master for the negligence of his servant. The statement commonly made in such cases is that the employer is under a duty which he is not free to delegate to the contractor." Id. See also 2 Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, The Law of Torts § 432 (2d ed. Practitioner Treatise Series 2011).

The inherently dangerous doctrine is also sometimes referred to as a nondelegable duty or as a peculiar risk. See, e.g., Restatement (Second) of Torts §§ 416, 427 (1965); 2 Dan B. Dobbs et al., The Law of Torts § 432.

[11] Restatement (Third) of Torts: Liability for Physical and Emotional Harm, § 55, at 363 (2012).

[12] Restatement (Third) of Torts: Liability for Physical and Emotional Harm, § 57, at 400 (2012).

[13] See Wagner, 143 Wis. 2d at 388 ("[A] principal employer may be liable to the independent contractor's employee for injuries caused by the principal employer's affirmative act of negligence.") (citing Barth v. Downey Co., Inc., 71 Wis. 2d 775, 239 N.W.2d 92 (1976)).

otherwise answerable for the negligence of the contractor . . . ."[14]

¶80 The Restatement (Third) of Torts: Liability for Physical and Emotional Harm acknowledges a variety of potential negligent acts on the part of the employer that would create liability, as listed in the relevant sections of the Restatement (Second):[15]

> The hirer's negligence might take various forms, including the failure to use reasonable care in selecting a competent contractor;[16] giving orders or directions to the contractor without exercising reasonable care;[17] failing to exercise reasonable care

---

[14] U.S. Fid. & Guar. Co. v. Frantl Indus., Inc., 72 Wis. 2d 478, 487, 241 N.W.2d 421, 426 (1976).

[15] The comment to this section notes that "Sections 55 and 56 subsume and replace the direct-liability provisions set out in §§ 410-415 of the Restatement Second of Torts." Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 55 cmt. a (2012).

[16] This provision adopts and replaces the liability in selection of a contractor discussed in Restatement (Second) of Torts § 411, which states:

§ 411 Negligence in Selection of Contractor

An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor

(a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or

(b) to perform any duty which the employer owes to third persons.

[17] This provision adopts and replaces the liability in orders or directions negligently given by the employer, discussed in Restatement (Second) of Torts § 410, which states:

as to dangerous conditions on the land;[18] failing to use reasonable care as to artificial conditions and

---

§ 410 Contractor's Conduct in Obedience to Employer's Directions

The employer of an independent contractor is subject to the same liability for physical harm caused by an act or omission committed by the contractor pursuant to orders or directions negligently given by the employer, as though the act or omission were that of the employer himself.

Similarly, if the employer retains control over the actions of the independent contractor's work, the employer remains liable for negligent acts caused by the work as discussed in Restatement (Second) of Torts § 414:

§ 414 Negligence in Exercising Control Retained by Employer

One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

[18] As the comment states, this liability for "failing to use reasonable care as to artificial conditions and activities on the land that pose a risk of physical harm to those off the land" replaces the specific rules relating to owners or possessors of land. Restatement (Second) of Torts §§ 412, 415 (1965).

The Restatement (Second) of Torts, § 412, creates liability for failure of the principal employer to properly inspect the contractor's work to ensure that the land or chattel is in reasonably safe condition:

§ 412 Failure to Inspect Work of Contractor After Completion

One who is under a duty to exercise reasonable care to maintain land or chattels in such condition as not to involve unreasonable risk of bodily harm to others and who entrusts the work of repair and maintenance to an independent contractor, is subject to liability for bodily harm caused to them by his failure to exercise such care as the circumstances may reasonably require

activities on the land that pose a risk of physical harm to those off the land;[19] and failing to exercise reasonable care as to the manner in which the

---

him to exercise to ascertain whether the land or chattel is in reasonably safe condition after the contractor's work is completed.

Restatement (Second) of Torts § 412, at 382 (1965).

The Restatement (Second) of Torts, § 415, provides for liability when a principal employer landowner opens the land for public use and fails to exercise reasonable care in protecting the public from harms caused by an independent contractor:

§ 415 Duty to Supervise Equipment and Methods of Contractors or Concessionaires on Land Held Open to Public

A possessor of land who holds it open to the public for any purpose is subject to liability to members of the public entering for that purpose for physical harm caused to them by his failure to exercise reasonable care to protect them against unreasonably dangerous activities of, or unreasonably dangerous conditions created by, an independent contractor or concessionaire employed or permitted to do work or carry on an activity on the land.

Restatement (Second) of Torts § 415, at 390 (1965).

[19] The Restatement (Second) of Torts § 414A provides for liability when a principal employer landowner knows or has reason to know that the independent contractor's activities or conditions create an unreasonable risk to those outside the land:

§ 414A Duty of Possessor of Land to Prevent Activities and Conditions Dangerous to Those Outside of Land

A possessor of land who has employed or permitted an independent contractor to do work on the land, and knows or has reason to know that the activities of the contractor or conditions created by him involve an unreasonable risk of physical harm to those outside of the land, is subject to liability to them for such harm if he fails to exercise reasonable care to protect them against it.

9

contractor performs any part of the work over which the hirer has retained control.[20]

Restatement (Third) of Torts § 55 cmt. a (2012) (footnotes added).

¶81 In those cases falling in the first category of employer liability, in which the employer's own negligence is at issue, the employer is liable if the employer breached his or her duty of ordinary care.[21]

---

[20] This provision adopts and replaces the principal employer's liability for failure to take precautions against peculiar known risks of harm discussed in Restatement (Second) of Torts § 413:

> § 413 Duty to Provide for Taking of Precautions Against Dangers Involved in Work Entrusted to Contractor
>
> One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer
>
> (a) fails to provide in the contract that the contractor shall take such precautions, or
>
> (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

[21] For example, in a case alleging negligent hiring or selection of an independent contractor, the jury determines whether the employer acted negligently in selecting the contractor based on competence, insurance, or other factors. See Wagner, 143 Wis. 2d at 389-90.

> The Restatement (Second) of Torts lists factors that determine the amount of care required in the selection and hiring of competent contractors:
>
> (1) [t]he danger to which others will be exposed if the contractor's work is not properly done; (2) the character of the work to be done——whether the work

¶82 Conversely, in cases in the second category, _i.e._, vicarious liability, the employer's own negligence is not at issue. Once an activity falls into this second category, the liability of an employer of an independent contractor depends on the tortious acts of its independent contractor, not the tortious act of the employer.

¶83 The Restatement (Second) of Torts explicitly notes that for this category of liability, the potential negligence of the employer is irrelevant:

> The rules stated in the following §§ 416-429 [under the heading "Harm Caused by Negligence of a Carefully Selected Independent Contractor"], unlike those stated in the preceding §§ 410-415 [under the heading "Harm Caused by Fault of Employers of Independent Contractors"], do not rest upon any personal negligence of the employer. They are rules of

---

lies within the competence of the average man or is work which can be properly done only by persons possessing special skill and training; and (3) the existence of a relation between the parties which imposes upon the one a peculiar duty of protecting the other.

Restatement (Second) of Torts § 411 cmt. C, at 378 (1965).

Similarly, in a case alleging a failure to inspect the contractor's work, an employer of an independent contractor may be liable for failure to properly inspect the independent contractor's work to ensure that it was left in a reasonably safe condition. See Brown v. Wis. Natural Gas Co., 59 Wis. 2d 334, 208 N.W.2d 769 (1973).

The Restatement (Second) of Torts recognizes that highly fact-based determinations are required to determine the amount of care required by the employer, because of "an almost infinite variety of construction and repair work done by all sorts and kinds of contractors on buildings and chattels used for infinitely varying purposes . . . ." Restatement (Second) of Torts § 412 cmt. c, at 383 (1965).

> *vicarious liability*, making the employer liable for the negligence of the independent contractor, *irrespective of whether the employer has himself been at fault*. They arise in situations in which, for reasons of policy, the employer is not permitted to shift the responsibility for the proper conduct of the work to the contractor. The liability imposed is closely analogous to that of a master for the negligence of his servant.

Restatement (Second) of Torts ch. 15, topic 2, intro. note, at 394 (1965) (emphasis added).

¶84 The Restatement (Third) of Torts: Liability for Physical and Emotional Harm echoes this declaration, stating that the rules it sets forth are "consistent with the Second Restatement of Torts" and asserting that the rules in this second category are "appropriately viewed as rules of vicarious liability."[22] The Restatement (Third) goes on to reiterate the irrelevance of the principal employer's own negligence: "These rules subject the hirer, even absent the hirer's own negligence, to liability for harm caused by the tortious conduct of another actor——the independent contractor."[23]

¶85 The Restatements (Second) and (Third) of Torts identify the "inherently dangerous" exception as falling into this second category of vicarious liability.

¶86 Section 416 of the Restatement (Second) states that an employer is subject to vicarious liability for the torts of an independent contractor under circumstances with an increased risk that can be reduced through special precautions:

---

[22] Restatement (Third) of Torts: Liability for Physical and Emotional Harm, § 57 cmt. A, at 401 (2012).

[23] Id. (emphasis added).

> One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

2 Restatement (Second) of Torts § 416 at 395 (1965).

¶87 Similarly, Restatement (Second) of Torts § 427 states that an employer of an independent contractor in a situation involving inherently dangerous activities is subject to vicarious liability for harm caused by the contractor's tortious acts.

> One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

Restatement (Second) of Torts § 427, at 415 (1965).

¶88 The Restatement (Third) of Torts: Liability for Physical and Emotional Harm echoes this rule, declaring that an employer may be vicariously liable for the torts of its independent contractor if the activity carries a peculiar risk, i.e., a heightened risk if reasonable care is not taken:

> An actor who hires an independent contractor for an activity that the actor knows or should know poses a peculiar risk is subject to vicarious liability for physical harm when the independent contractor is negligent as to the peculiar risk and the negligence is a factual cause of any such harm within the scope of liability.

13

Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 59 (2012).[24]

¶89 The view of the Restatements (Second) and (Third) and the law of vicarious liability of an employer of an independent contractor are reflected in the literature. The Prosser and Keeton treatise notes that the "inherently dangerous" exception is one of many exceptions to the general rule that there is no vicarious liability upon an employer for the causal negligence of the independent contractor.[25] Specifically, this category of cases goes beyond the reasonable precautions taken by an employer, "hold[ing] the employer liable for the negligence of the contractor, although [the employer] has . . . done everything that could reasonably be required of him [or her]. They are thus cases of vicarious liability."[26] See also 2 Dan B. Dobbs, Paul T. Hayden, & Ellen M. Bublick, The Law of Torts § 432 (2d ed. Practitioner Treatise Series 2011); Francis M. Dougherty, Annotation, Liability of Employer with Regard to Inherently Dangerous Work for Injuries to Employees of Independent Contractor, 34 A.L.R. 4th 914 (1984 & Supp.).

II

¶90 Wisconsin case law has followed these tort principles explained above involving inherently dangerous activities.

---

[24] The Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 59 cmt. a (2012) notes that it replaces Sections 416 and 427 of the Restatement (Second).

[25] W. Page Keeton et al., Prosser and Keeton on Torts § 71, at 512 (5th ed. 1984).

[26] Id. at 511.

¶91 As the majority opinion correctly notes,[27] our case law has cited Sections 416 and 427 of the Restatement (Second) of Torts when assessing whether an employer can be held vicariously liable for the torts of its independent contractor:  "Sections 416 and 427 impute the independent contractor's negligence to the principal employer <u>irrespective of whether the employer is himself or herself at fault</u> on the basis that the dangerous activities involved give rise to a nondelegable duty."  <u>Wagner v. Cont'l Cas. Co.</u>, 143 Wis. 2d 379, 391, 421 N.W.2d 835 (1988) (emphasis added) (cited by the majority op., ¶33.).

¶92  In <u>Hackett v. Western Union Tel. Co.</u>, 80 Wis. 187, 49 N.W. 822 (1891), this court recognized that employing an independent contractor to do inherently dangerous work renders the employer liable for injuries caused by the sole negligence of the contractor.  The <u>Hackett</u> court described the liability as follows:

> [W]here the performance of such contract, in the ordinary mode of doing the work, necessarily or naturally results in producing the defect or nuisance which causes the injury, then the employer is subject to the same liability to the injured party as the contractor.

<u>Hackett</u>, 80 Wis. at 193.

¶93 The court reiterated this principle of vicarious liability of an employer who employs an independent contractor to perform inherently dangerous activity in subsequent cases, notably in <u>Carlson v. Stocking</u>, 91 Wis. 432, 435, 65 N.W. 58 (1895) (cited in majority op., ¶27) and <u>Medley v. Trenton Inv.</u>

---

[27] Majority op., ¶33.

Co., 205 Wis. 30, 36, 236 N.W. 713 (1931) (cited in majority op., ¶31).

¶94 The majority opinion properly concludes that spraying herbicides is inherently dangerous as a matter of law in the context and facts of the instant case. Majority op., ¶¶58-60. If an activity is inherently dangerous and an independent contractor, in performing that activity, negligently causes harm to a third party, then the employer of the independent contractor is liable, irrespective of the employer's own negligence.

¶95 Applying the rule to the instant case, Luethi may be liable for the harm caused to the innocent neighbor plaintiff if it is proved that the independent contractor was causally negligent in spraying the herbicides, an inherently dangerous activity. The only remaining question, in my opinion, for the circuit court on remand is whether the independent contractor was causally negligent in damaging the innocent neighbor plaintiff's property. The inquiry should end here.

¶96 Yet the majority opinion appends a confusing and unnecessary additional step to the inquiry on remand.

¶97 I turn now to the majority opinion's additional step, requiring the innocent neighbor plaintiff to prove on remand that Luethi (the employer of the independent contractor in the present case) knew or had reason to know about the danger

16

inherent in the spraying of the herbicide. See majority op., ¶¶13-14, 53-56.[28]

### III

¶98 In the present case, this court has declared that as a matter of law the activity of the independent contractor spraying herbicides was inherently dangerous.[29] In order to declare an activity "inherently dangerous" as a matter of law, the majority opinion rules that the activity poses a "naturally expected risk of harm." Majority op., ¶¶4, 10, 11, 58. Wisconsin Civil Jury Instruction 1022.6 explains that "[i]nherently dangerous work is work from which one can naturally expect harm to arise unless something is done to avoid that harm." If a risk of harm is "naturally expected," then the reasonable person, as a matter of law, knows or has reason to know that an increased risk of harm is "inherent in or normal to the work."[30]

¶99 Once the court has determined as a matter of law that the activity is "inherently dangerous," that is, that the activity poses a naturally expected risk of harm, the court has

---

[28] The majority opinion at ¶59 states: "The next questions to answer are 1) whether Luethi failed to use ordinary care with regard to any danger inherent in the herbicide spraying that he knew or had reason to know about . . . ."

[29] Majority op., ¶¶58, 56 & n.23 (citing Mueller v. Luther, 31 Wis. 2d 220, 230-231, 142 N.W.2d 848 (1966)).

[30] Restatement (Second) of Torts § 427 (1965).

Ordinarily, as the majority opinion correctly notes, the issue of whether an activity is inherently dangerous is a question of fact for the fact finder. Majority op., ¶56.

17

determined that a reasonable person in the position of Luethi knew or had reason to know the activity was inherently dangerous. Majority op., ¶¶8, 55. The end!

¶100 Sister state jurisdictions have similarly recognized that the "knows or has reason to know" element is included within the designation of an activity as "inherently dangerous."[31]

¶101 In Huddleston v. Union Rural Electric Association, 841 P.2d 282 (Colo. 1992), the Colorado Supreme Court outlined the link between "inherently dangerous" activities and the "knows or has reason to know" element as follows:

> For purposes of the "inherently dangerous" activity exception, therefore, the focus is on dangers recognizable in advance or contemplated by the employer as being "inherent" in the activity, or the circumstances of performance, when carried out in its ordinary way, and not on risks created by or following from the contractor's unforeseeable departure from the ordinary or prescribed way of performing the work under the circumstances.
>
> Against this backdrop of the Restatement (Second) of Torts and related case law, we conclude that an activity will qualify as "inherently dangerous" when it presents a special or peculiar danger to others that is inherent in the nature of the activity or the particular circumstances under which the activity is to be performed, that is different in kind from the ordinary risks that commonly confront persons in the community, and that the employer knows or should know is inherent in the nature of the activity or in the particular circumstances under which the activity is to be performed.

Huddleston, 841 P.2d at 289-90 (emphasis added).

---

[31] See 2 Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 5, cmt. e, at 420 (2012).

18

¶102 Thus, in order to determine whether an activity is "inherently dangerous," a court must look to the "knows or has reason to know" element before determining an activity "inherently dangerous," not the other way around. Whether the employer "knows or has reason to know" of the inherent danger is part of the objective test for determining whether an activity is inherently dangerous. If a danger is "inherent," it must necessarily be one that an employer of an independent contractor (using the reasonable person objective standard) expects to occur from the particular activity.

¶103 Nevertheless, the majority opinion reasons that on remand the factfinder must determine whether a reasonable person knew or had reason to know what the court has already determined to be "the naturally expected risk of harm." I find this reasoning perplexing and contradictory to the majority opinion's holding that, as a matter of law, reasonable people know or have reason to know that the spraying of herbicides in the instant case is inherently dangerous.

¶104 The "knew or had reason to know" element is satisfied in the present case as a definitional part of "inherently dangerous," rather than as an additional question of fact to be determined after this court declares the activity inherently dangerous as a matter of law.

IV

¶105 The majority opinion declares that in order to determine whether vicarious liability exists for Luethi in the instant case, the fact finder must examine "whether Luethi

19

failed to use ordinary care with regard to any danger inherent in the herbicide spraying that he knew or had reason to know about." Majority op., ¶59.

¶106 Nevertheless, the majority opinion asserts that "if spraying [herbicides] is an inherently dangerous activity, then it gives rise to a duty of ordinary care for [the employer of the independent contractor] for the acts of the independent contractor." Majority op., ¶8. Yet, as our case law adopting the principles of tort law for inherently dangerous activities clearly demonstrates, the employer's behavior does not govern the liability of the employer for the causal tortious conduct of the independent contractor who is engaged in an inherently dangerous activity. The employer in such circumstances is vicariously liable irrespective of his or her own fault.

¶107 The majority opinion asserts that the need to address the factual question of the due care of the employer who employs an independent contractor derives from Wisconsin's pattern jury instruction for the liability of an employer for the torts of an independent contractor and from Restatement (Second) of Torts § 413.

A

¶108 The majority opinion comments on the special verdict form and the pattern jury instructions as follows:

> The suggested verdict form that follows Wisconsin Jury Instruction——Civil 1022.6, Liability of one employing independent contractor, presents three questions.

> The first is, "Was the work performed by the (owner) (independent contractor) inherently dangerous?"

20

The second is, "If you answered 1 "yes," then answer this question: Did (owner) fail to use ordinary care in (describe the work done)?"

And the third is, "If you answered question 2 "yes," then answer this question: Was that failure to use ordinary care a cause of (injury to (third person) (damage to (third person)'s property)?"

Majority op., ¶11 n.8.[32]

¶109 The instant case is a summary judgment case. No jury instruction or special verdict is involved.

¶110 The majority opinion confuses whose ordinary care and wrongdoing is at issue in the instant case, which is a vicarious liability case. It is the independent contractor's causal negligence that matters, not Luethi's. Luethi was not spraying any herbicides himself in the instant case. He is vicariously liable for the causal negligence of his independent contractor in applying the herbicides——an inherently dangerous activity.

¶111 I am unpersuaded by the jury instruction's references to the employer's failure to use ordinary care. The comments to the jury instruction are not supported by the case law cited.[33]

¶112 The Wagner case, cited by the jury instruction,[34] specifically states that the employer's liability for the negligent acts of its independent contractor in performing

---

[32] See majority op., ¶¶10-12, 61 (citing Wis JI——Civil 1022.6, Suggested Verdict Form 1).

[33] The comments assert that "the risk of injury or damage (under the inherently dangerous exception) from the work was so great that the owner or principal contractor should have taken reasonable steps to avoid it." Wis JI——Civil 1022.6 cmt. (2005).

[34] Wis JI——Civil 1022.6 at 1-2 (citing and quoting Wagner, 143 Wis. 2d at 391).

21

inherently dangerous activities exists "irrespective of whether the employer is himself or herself at fault."[35]

¶113 The other cases cited in the comments to the jury instruction declare that the employer's own acts and negligence are irrelevant to the determination of the employer's vicarious liability for the causal negligence of an independent contractor performing an inherently dangerous activity:

> While it may be just to hold the party authorizing the work . . . exempt from liability for injury resulting from negligence which he had no reason to anticipate, there is, on the other hand, good ground for holding him liable for an injury caused by an act certain to be attended with injurious consequences, if such consequences are not in fact prevented, no matter through whose default the omission to take the necessary measures for prevention may arise.

Wertheimer v. Saunders, 95 Wis. 573, 581, 70 N.W. 824 (1897) (emphasis added). That is, regardless of any wrongdoing on the part of the employer, when the activity is one that is "certain to be attended with injurious consequences," liability attaches to the employer for the causal negligence of the independent contractor.

¶114 In Finkelstein v. Majestic Realty Corp., 198 Wis. 527, 224 N.W. 743 (1929) (also cited in the comments to the jury instruction), there were multiple theories of negligence of an independent contractor for a roof tile that fell onto a roadway: First, the employer's failure to inspect; and second, the negligence of the independent contractor in applying the roof tiles. The Finkelstein jury found no negligence on the part of

---

[35] Wagner, 143 Wis. 2d at 391.

the independent contractors and thus only the employer's own negligence was at issue. Nevertheless, the Finkelstein court stated the general rule for the liability of an employer who employs an independent contractor who negligently performs an inherently dangerous activity as follows:

> [I]f the injuries had resulted from the negligent act of the contractors, the owner would be jointly liable with them. But the jury has expressly absolved the contractors from negligence, and therefore the liability must rest solely upon the owner.

Finkelstein v. Majestic Realty Corp., 198 Wis. 527, 537, 224 N.W. 743 (1929).

¶115 Thus, it is clear, as we have explained previously, that there are two separate inquiries in determining the liability of an employer who employs an independent contractor: (1) whether the employer himself engaged in any wrongdoing; and (2) whether, in the case of an independent contractor performing an inherently dangerous activity, the independent contractor committed causal negligence in performing the activity. If the activity is inherently dangerous, the employer's liability is vicarious: the negligence of the independent contractor attaches to the employer regardless of the principal employer's own actions.

¶116 Rather than clarify the jury instruction, the majority opinion simply extends the confusion. I am persuaded that the Wisconsin Jury Instructions Committee should consider clarifying the jury instruction in light of the case law upon which the instruction relies.

B

23

¶117 In an attempt to buttress its conclusion that the employer's personal duty of ordinary care is relevant in the instant case, the majority opinion also relies on Section 413 of the Restatement (Second) of Torts, a section that it acknowledges is entirely inapplicable to the instant case. Section 413 discusses only the fault of the employer, not the vicarious liability at issue in the instant case.[36]

¶118 Indeed, the majority opinion properly acknowledges that Section 413 is inapplicable to the instant case because the innocent neighbor plaintiff alleges no wrongdoing on the part of Luethi.[37] Specifically, the plaintiffs "did not allege in the complaint that any harm was caused by [Luethi]." Majority op., ¶33 n.19.

* * * *

¶119 By muddling through direct liability and vicarious liability of an employer who employs an independent contractor and failing to state the doctrines clearly, the majority opinion has injected confusion into the law. Furthermore, the majority opinion has shifted the liability for inherently dangerous activities from an employer who employs the independent contractor for an inherently dangerous activity, the person who reaped the benefits of the contracted work, to the innocent neighbor plaintiff, who had no knowledge about or control over the spraying of herbicides.

---

[36] See majority op., ¶¶33, 51-53.

[37] Majority op., ¶33 n.19.

¶120 The majority opinion has subverted the long-standing rationale for the "inherently dangerous exception," and indeed jeopardizes the vitality of the "inherently dangerous" doctrine. If a plaintiff must show that an employer who employs an independent contractor has breached the employer's own duty of ordinary care, in what way does a case of "inherently dangerous" activity differ from any other negligence claim against the employer?

¶121 As the Restatement (Third) of Torts: Liability for Physical and Emotional Harm explains, the "inherently dangerous activity" doctrine imposing vicarious liability on an employer of an independent contractor for the tortious actions of the independent contractor is motivated by public policy concerns.[38] That is, once the activity is one that a reasonable person knows or has reason to know would pose a peculiar risk, the liability for creating such a risk falls on the employer for the torts of the independent contractor, not the innocent third parties harmed by such torts.

¶122 The majority opinion has apparently converted a longstanding rule that an employer of an independent contractor is vicariously liable for the torts of an independent contractor in performing inherently dangerous activities into one of an employer's liability for the employer's personal negligence and has converted a rule that places the burden of risk for inherently dangerous activities on the person creating those

---

[38] Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 59 cmt. d (2012). See also note 1, supra.

dangers into a rule placing that burden on innocent third parties. This outcome is contrary to the letter and the rationale of our case law, the Restatements of Torts, treatises, and case law from other states.

¶123 For the reasons set forth, I write separately.

¶124 I am authorized to state that Justices ANN WALSH BRADLEY and DAVID T. PROSSER join this opinion.